EMMETT BRALY v. THE STATE.

No. 16276.   Delivered February 21, 1934.
Reported in 68 S. W. (2d) 504.

The opinion states the case.

*L. H. Welch,* of Breckenridge, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is conspiracy to commit theft; the punishment, confinement in the penitentiary for three years.

The parties alleged to have entered into the conspiracy were Keith Chastain, Robert Hill, Fred Kelley, Albert Johnson, Cleo Morton, Debs Hearne and appellant. Cleo Morton, Robert Hill and Fred Kelley testified in behalf of the state, the jury being instructed that they were accomplice witnesses requiring corroboration. They testified to the effect that they entered into an agreement with appellant and the other parties named in the indictment to steal a safe and two hundred dollars in money from the Plaza Theater, and that on the 5th of March, 1933, the theft was consummated and the safe and money removed to Crystal Falls in a Chrysler coupe driven by Keith Chastain. According to their version, appellant was not present when the theft was committed, but Robert Hill, Albert Johnson and Fred Kelley alone entered the theater and carried the property to the bottom of the stairs, where they were joined by Keith Chastain, who, with them, carried the safe to Crystal Falls, where they knocked the knob off and took possession of the contents of the safe. Cleo Morton, one of the accomplices, testified that about two weeks before the theft he drove with Keith Chastain and appellant north of Breckenridge toward the "Twin Lakes" where they met Archie Ware, a negro; that appellant got out of the car and talked to Ware and upon returning stated that he had borrowed a sledge hammer and a punch

from Ware which they could use in knocking the knob off of the safe when they entered the Plaza Theater. The witness testified further that, pursuant to appellant's suggestion, he made arrangements with Debs Hearne, an employee of the theater, to permit them to perpetrate the theft in consideration of receiving part of the spoils. The three accomplice witnesses testified as to their presence with appellant and the others named in the indictment near the theater on the night of the theft.

Aside from the testimony of the accomplice witnesses, we find in the record the following: R. L. Hansard, proprietor of the theater, testified to the fact that his safe and money were stolen on the night of March 5, 1933, and that when he recovered the safe, the knob had been knocked off and the door ruined. He testified further that he saw appellant and Cleo Morton, one of the accomplices, at ten o'clock on the night of the theft coming toward the theater and that when they saw him they made a quick turn and drove away. He testified that Cleo Morton had worked for him at times and that Debs Hearne was working for him at the time the theft was committed. The chief of police testified that on the night before the theft he saw Keith Chastain, appellant, Albert Johnson, Robert Hill and Fred Kelley, together in a Chrysler car in front of the Wheeler drug store, and that they later drove east. The night watchman testified that on the night before the theft he saw the parties mentioned in the Chrysler car, and that appellant had his hat pulled down and that when he asked who the strange boys were in the car Keith Chastain said "Oh, hell," and drove away. He testified further that on the night of the theft he saw Keith Chastain about 12 or 1 o'clock driving in a Chrysler car, and that he saw him a good many times on that night. He thought that he was watching him. Archie Ware testified that he saw appellant near "Twin Lakes" in a Chrysler car in company with Keith Chastain about two weeks before the theft, and that out of the presence of the others appellant asked him for a punch and a hammer, which he agreed to let him have, and that thereafter appellant got the articles from him, but did not tell him what he wanted them for. He testified further that appellant returned them about a week before the theft. The witness Bud Routt who was with Ware testified to seeing appellant with some other boys near "Twin Lakes" and to having seen appellant and Ware engage in conversation out of his presence and hearing.

Except in the testimony of the accomplice witnesses, it was not shown that the stolen property was ever in the possession of any of the alleged conspirators. The record is silent as to

the place where the safe was found. No witness, other than accomplices, placed any of the parties alleged to have committed the offense in the building where the safe was taken. No witness, other than the accomplices, was present when the alleged agreement to commit the offense was entered into.

Article 1622, P. C., defines a conspiracy as an agreement entered into between two or more persons to commit a felony. Article 1624, P. C., provides: "Before conviction can be had for the offense of conspiracy, it must appear that there was a positive agreement to commit a felony. It will not be sufficient that such agreement was contemplated by the parties charged." The substantive offense of conspiracy to commit a felony being complete when the contract or conspiracy is entered into, it is an independent offense for which the parties can be prosecuted and punished. Rice v. State, 51 S. W. (2d) 364. It is observed that the accomplices alone testified that there was a positive agreement to commit a felony. Unless they were corroborated as to this positive agreement, the conviction cannot stand. Article 718, C. C. P., provides that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed, and further provides that the corroboration is not sufficient if it merely shows the commission of the offense. The bare fact that the parties were seen together on the night the offense was committed does not, in the sense required by the statute, tend to establish the fact that they had entered into a conspiracy to commit the theft. Not any of the stolen property was found in the possession of appellant or his alleged co-conspirators. We are unable to reach the conclusion that the fact that appellant borrowed a hammer and punch two weeks prior to the burglary should be deemed a circumstance sufficient to corroborate the accomplices to the effect that a positive agreement had been entered into to commit the offense of theft. According to the witness from whom the articles were borrowed, they were returned a week before the theft was committed. As the testimony of the accomplice witnesses alone connected appellant with the commission of the offense of theft, the fact that the theft was committed is not deemed to sufficiently corroborate their testimony that a positive agreement to commit such theft had been entered into.

Believing the evidence insufficient to sustain the conviction, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.