**Richard J. RICE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 58428.**

Court of Criminal Appeals of Texas, Panel No. 3.

Feb. 27, 1980.

On Rehearing July 16, 1980.

Rehearing Denied Oct. 29, 1980.

---

Emmett Colvin and David L. Botsford, Dallas, for appellant.

Henry Wade, Dist. Atty., John H. Hagler and John R. Roach, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, PHILLIPS and DALLY, JJ.

## OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for conspiracy to commit theft over $10,000. Punishment was assessed by the jury at imprisonment for five years.

Appellant attacks the sufficiency of the evidence to sustain the conviction and contends that evidence of an extraneous offense of arson was improperly admitted in evidence. We reverse on the latter ground.

Jack Marshall testified at appellant's trial as an accomplice witness. According to Marshall appellant engaged him in a conspiracy to steal insurance proceeds by burning down Wamble's Department Store in Dallas, which appellant owned. In payment Marshall was to share in the proceeds received from the insurance company. Marshall testified that he and appellant devised a plan to burn the building down, and he and a man named Dennis Yeager carried out the plan on December 1, 1975. The act of arson was successful; the building burned to the ground. Appellant filed a claim with his insurance company, but never came to terms with them, and never received any payment for his loss. Both appellant and Marshall were indicted in connection with the offense; in exchange for testifying against appellant Marshall pleaded guilty and the State recommended a punishment of three years.

Marshall also testified that appellant asked him in August 1975 whether he would be willing to burn down two barns located on appellant's farm near Alvarado in exchange for a share of the insurance proceeds, and Marshall agreed to do so for

$3,000. According to Marshall, after he made an unsuccessful attempt to burn the larger of the two barns, he succeeded in burning the barn down on October 10, 1975, by soaking the hayloft with gasoline and throwing a Molotov cocktail into the loft. Marshall testified that he received $3,000 from appellant a month after burning down the barn.

The State presented other witnesses in an attempt to corroborate Marshall's accomplice witness testimony concerning both the primary offense and the extraneous offense.

Appellant contends that the extraneous offense of arson was inadmissible because it was not proven that an offense was committed or that appellant committed the offense. Appellant further urges that in order to prove an extraneous offense, the State cannot rely solely on the testimony of an accomplice witness, but must corroborate such testimony with sufficient independent evidence, just as it must when it relies on accomplice witness testimony to prove the main offense.

Appellant lodged a proper objection at trial; the court held a hearing outside the presence of the jury. Upon hearing the State's evidence, the court ruled that the extraneous offense of arson was sufficiently proven up and allowed it to be admitted in evidence.

Evidence of an extraneous offense should not be admitted unless the commission of the offense is clearly proven and the accused is shown to have committed the offense. *Eanes v. State*, 546 S.W.2d 312 (Tex. Cr.App.1977); *Landers v. State*, 519 S.W.2d 115 (Tex.Cr.App.1974, Opinion on State's Motion for Rehearing). It appears to have been a number of years since this Court addressed the question whether the testimony of an accomplice witness concerning the commission of an extraneous offense must be corroborated by independent evidence.

In reversing a conviction for possessing intoxicating liquor for the purpose of sale, we held in *Wells v. State*, 118 Tex.Cr.R. 355, 42 S.W.2d 607 (Tex.Cr.App.1931), that three extraneous offenses of delivery of whiskey were inadmissible for lack of corroboration:

... It is a well-settled rule that the guilt of one accused of crime cannot be legally shown by the uncorroborated testimony of an accomplice or any number of accomplices. It is the settled law in this state that when evidence of collateral crimes is introduced for one of the various purposes for which such evidence becomes admissible, the jury should be instructed that they cannot consider against the defendant such collateral crimes, unless it has been shown to their satisfaction that the accused is guilty thereof.

There being in the present case no semblance of effort to corroborate Nowell with reference to the three transactions prior to that of June 24th, and he being an accomplice, it follows as a matter of law that there was no legal proof as to appellant's guilt in the commission of those offenses, and therefore upon that ground also appellant's motion to have the testimony withdrawn from the jury should have been sustained.

*Id.* at 608–609. See also *Lankford v. State*, 93 Tex.Cr.R. 442, 248 S.W. 389 (1923).

The general rule that accomplice witness testimony must be corroborated is codified in Section 38.14, V.A.C.C.P. That statute reflects the Legislature's determination, in accordance with common sense, that the testimony of an accomplice witness is generally less reliable than the testimony of a witness who is not connected with the crime or subject to being charged with an offense himself.[1] The reasoning behind the rule applies no less when the accomplice witness testifies in regard to an extraneous offense as when he testifies to the main offense charged. His testimony in both cases is

---

1. Often, as in this case, the accomplice witness testifies in exchange for a favorable recommen-

dation of punishment by the State in his own case.

offered to convict the accused. Moreover, if the accomplice witness could testify to an alleged extraneous offense without the necessity of being corroborated, his own testimony regarding the extraneous offense could provide the corroboration needed to convict the accused of the main offense. This would be a classic case of lifting oneself by one's own bootstraps.

We now reiterate the sound rule followed in *Wells*: where an accomplice witness to the main offense at trial testifies to an extraneous offense in which he was also an accomplice, his testimony must be corroborated in the normal fashion by independent evidence tending to connect the accused with the extraneous offense. Moreover, the evidence as a whole must clearly prove that an offense was committed and that the accused committed the offense.

Concerning the extraneous offense, Marshall testified that he and appellant agreed to burn the barn down in order to claim the insurance proceeds. Marshall made an unsuccessful attempt to burn the barn. Marshall testified that when he informed appellant that he had not succeeded, appellant "told me to get the damned thing down anyway it could go down." Marshall testified in detail how he subsequently committed the arson. After the barn burned, appellant paid Marshall the $3,000 that they had agreed upon and spoke to Marshall about burning down Wamble's.

Marshall's accomplice testimony showed that appellant directed Marshall to burn down the barn, and thus was a party to the commission of the arson. In order to prove up the arson offense, the State was obliged to provide evidence to corroborate Marshall's testimony concerning the commission of that offense.

The State adduced the following evidence to corroborate Marshall's testimony: (1) on October 10, 1975, appellant's barn burned down· (2) on November 7, 1975, appellant deposited in the bank an $11,000 check from his insurance company for the loss, retaining $3,000 in cash; (3) on September 10, 1975, an endorsement had been made to appellant's insurance policy removing one Marlin Gibbs from the mortgagee clause in the insurance policy. After paying appellant the full amount of the loss, the insurance company discovered that Gibbs was still a creditor of appellant, and the company paid Gibbs for the loss.

In order to prove the extraneous offense of arson, it was necessary to prove the corpus delicti, i.e., that the burning of the barn was due to an intentional act, rather than to an accidental or natural cause. *Bussey v. State*, 474 S.W.2d 708 (Tex.Cr. App.1972). Proof of the corpus delicti cannot be made by the accomplice witness testimony alone; such testimony must be corroborated by independent evidence tending to show the commission of an offense. *Thedford v. State*, 114 Tex.Cr.R. 138, 25 S.W.2d 341 (1930); *McDaniel v. State*, 93 Tex.Cr.R. 354, 247 S.W. 854 (1923)· *Crowell v. State*, 24 Tex.App. 404, 6 S.W. 318 (1888). We stated in *Crowell*:

> . . . Our view of the statute relating to accomplice testimony is that, where the corpus delicti of the offense is proved alone by accomplice testimony, such testimony must be corroborated by other evidence tending to establish the commission of the offense, and the defendant's connection with the commission of the same. It will not suffice to corroborate such testimony to the extent only of connecting the defendant with the commission of an act alleged to be an offense. It must be proved that the act committed was an offense· and, when this proof is made by an accomplice, his testimony must be corroborated . . . .

There was no evidence in this case that the fire was of an incendiary origin. It was shown at trial that upon investigating the matter the insurance company adjuster concluded that the fire was of an unknown origin. Although appellant's withdrawal of $3,000 upon depositing the insurance check is consistent with Marshall's testimony that he received a payment of $3,000, such a

withdrawal is entirely innocent in itself and does not help establish the corpus delicti. The endorsement on the insurance policy, although arguably showing motive, does not corroborate any aspect of Marshall's testimony concerning the commission of the offense. There is no evidence to corroborate the accomplice witness testimony that the fire was due to an act of arson rather than to accidental or natural causes. See *Jordan v. State*, 122 Tex.Cr.R. 646, 57 S.W.2d 127 (1933).

We conclude that the independent evidence fails to corroborate Marshall's testimony that the extraneous offense of arson occurred. Marshall's testimony alone was incompetent to prove that an offense had been committed. The extraneous offense of arson was improperly admitted in evidence. *Eanes v. State*, supra; *Landers v. State*, supra.[2]

The dissent urges that we are mistaken in viewing the extraneous offense as an arson; that, properly viewed, the offense was a conspiracy to commit theft of insurance proceeds as was the main offense. The dissent then asserts that the conspiracy offense was sufficiently corroborated.

First, we note that the extraneous offense of arson was just as relevant as the offense of conspiracy to commit theft of insurance proceeds. According to the court's charge the extraneous offense was admitted to show appellant's intent with respect to the main offense, and to help determine the existence of a scheme or design on appellant's part in connection with the main offense. The alleged arson was committed so that appellant could obtain insurance proceeds, just as in the main offense. Moreover, the overt act alleged in pursuance of the main conspiracy offense was an act of arson — Marshall's setting fire to Wamble's Department Store. Appellant's alleged participation in the burning of his own barn in order to collect insurance proceeds certainly was probative of his intent and scheme to defraud the insurance company by burning down his department store. Moreover, arson is a more serious offense than conspiracy. For these reasons, the extraneous offense is properly treated as an arson.[3]

Second, the dissent's assertion that the offense of conspiracy was sufficiently corroborated is incorrect. In order to show the offense of conspiracy the evidence must corroborate the agreement between the conspirators. *Braly v. State*, 125 Tex.Cr.R. 374, 68 S.W.2d 504 (1934); *Clark v. State*, 131 Tex.Cr.R. 333, 98 S.W.2d 997 (1936). As we pointed out earlier, only two facts testified to by Marshall were corroborated by the independent evidence: the burning of the barn and appellant's retention of $3,000 in cash upon depositing the insurance proceeds. Neither fact is incriminatory in nature. Both have no probative value whatsoever unless one assumes that the barn in fact burned as a result of an act of arson. One could all too easily manufacture a conspiracy theory that conveniently coincided with just these two facts. This problem is

2. Upon hearing the State's evidence at the hearing outside the presence of the jury, the court should have ruled the extraneous offense inadmissible as a matter of law for the State's failure to show that an offense had been committed. Assuming arguendo that the evidence showed the commission of an offense and was admissible, we note that the court failed to charge the jury that Marshall was an accomplice witness with respect to the extraneous offense, whose testimony concerning such offense had to be corroborated by independent evidence. The court charged the jury they could only consider extraneous offenses in determining appellant's intent or design with respect to the main offense, and that they could not consider any extraneous offense unless they found beyond a reasonable doubt that appellant committed the offense. The court's charge was correct as far as it went. That charge is insufficient, however, where proof of the extraneous offense is dependent on accomplice witness testimony.

3. Although their view of the offense is not binding on us, it is interesting to note that the court and both parties at trial viewed the extraneous offense as an arson, referring to it as the "barn burning." Most likely the jury also viewed it as an arson.

especially troublesome in this case because the alleged co–conspirator exchanged his testimony against appellant for a favorable plea agreement.

The dissent relies most heavily on the removal of Gibbs, a mortgagee, from the insurance policy. The dissent asserts that Gibbs was "fraudulently" deleted, which allowed appellant to collect proceeds that "rightfully" belonged to the mortgagee. This "wrongful" deletion supposedly showed appellant's "felonious" intent, similar to his alleged intent with respect to the main offense. How the dissent determines that the removal of Gibbs from the insurance policy was done fraudulently, or even done by appellant, is not evident from the record. The State simply adduced evidence through J. D. Smith, an official of the insurance company, that Gibbs had been removed from the policy, and the company later paid Gibbs on the same claim that it had paid appellant. Gibbs did not testify, no document was admitted showing a lien, and it was not shown that appellant caused Gibbs to be removed as a mortgagee. Neither the amount of the lien nor the amount of the claim paid to Gibbs was established. This scant evidence is not probative of any fraudulent intent, and is not incriminating unless one first assumes that Marshall's testimony is true.

The dissent apparently believes that a conspiracy is easier to corroborate than a completed offense. To the contrary, because conspiracy is an inchoate offense, essentially consisting of an agreement between parties, it is generally more difficult to corroborate than a completed offense. In conspiracy cases with facts comparable to these, this Court has held the evidence insufficient to corroborate the offense. *Braly*, supra; *Clark*, supra; *McQuinn v. State*, 134 Tex.Cr.R. 375, 115 S.W.2d 926 (1938); *Brady v. State*, 122 Tex.Cr.R. 539, 56 S.W.2d 879 (1933). In the present case the three facts relied upon by the State to corroborate Marshall's testimony hardly amounted to the sort of detailed corroboration that occurred in *Carrillo v. State*, 566 S.W.2d 902 (Tex.Cr.App.1978), cited by the dissent. We conclude that the "parallel overt acts" relied upon by the dissent are too few in number and lacking in probative value to corroborate the alleged agreement.

Assuming the conspiracy was proved up, however, its admission in evidence was nonetheless error. In order to prove up the conspiracy the State introduced evidence of three additional *unproven* offenses. One was the arson, which we have already shown was unproven. In addition to the arson, the State introduced evidence of appellant's completed theft of the insurance proceeds, shown by his cashing the $11,000 check from the insurance company. This offense was uncorroborated, hence unproven, because it required a showing that the proceeds were taken feloniously, and that required a showing that the barn burned as a result of an act of arson. The State further (and totally gratuitously) introduced evidence of an attempted arson through Marshall's testimony that he made an initial unsuccessful attempt to burn down appellant's barn. This offense of attempted arson was totally uncorroborated.

Thus, in order to show the extraneous offense of conspiracy, a third degree felony in this case, the State introduced evidence of two unproven second degree felonies (arson and theft), and an unproven third degree felony (attempted arson). The prejudicial value of these three unproven and more serious offenses outweighed the limited probative value of the conspiracy to show appellant's intent and scheme with respect to the main offense. This is especially true because (1) the participants at the trial, and undoubtedly the jury, viewed the offense as an arson rather than a conspiracy; and (2) evidence of extraneous offenses (in this case the additional extraneous offenses) is inherently prejudicial, tends to confuse the issues, and forces the accused to defend himself against charges of which he was given no notice. See *Carrillo v. State*, 591 S.W.2d 876 (Tex.Cr.App.1979)

(Phillips, J., concurring); *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972).

Under any theory, the admission of the extraneous offense in this case was error.

Appellant also challenges the sufficiency of the evidence to sustain the conviction. Taking into account all the facts adduced by the State, including the extraneous offense, the evidence is sufficient to sustain the conviction. Absent the evidence of the extraneous offense, the evidence might well be insufficient to sustain the conviction. Assuming this to be true, however, a reversal under *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), is not required. Our holding is not that the State failed to prove its case, but that the trial court permitted the State to prove its case through the incorrect receipt of evidence. See *Ex parte Duran,* 581 S.W.2d 683 (Tex.Cr.App.1979). The State may have had evidence to offer in lieu of the extraneous offense. Moreover, the extraneous offense itself may prove to be admissible in another trial.

The judgment is reversed and the cause remanded.

---

DALLY, Judge, dissenting.

I have grave doubt whether Art. 38.14, V.A.C.C.P. requires the testimony of an accomplice witness concerning an extraneous offense be corroborated before it is admissible in evidence, but without deciding whether an accomplice witness testifying about an extraneous offense need be corroborated, the evidence in this case is suffi-cient to corroborate the accomplice testimony about the extraneous offense. The flaw in the majority opinion lies in the apparent belief that the extraneous offense was arson, with independent proof of the corpus delicti requiring independent proof of an unlawful burning. The offense charged was not arson, but was conspiracy to commit a theft from the insurance company. The extraneous offense was not admitted to show a prior arson, but was admitted to show a common scheme or design to defraud the insurance company.[1] At trial appellant placed his specific intent to commit theft in issue, so the State sought to show a previous conspiracy with the similar intent of unlawfully obtaining money from the same insurance company.

The relevance of the extraneous offense was that it was a prior conspiracy, not a prior arson. This is obvious since the prior arson was supposedly committed quite differently from the arson in this case and thus the prior arson, standing alone, might not have been admissible in evidence. Proof of the relevant extraneous offense, the conspiracy, would have been complete without ever showing that the arson occurred. See V.T.C.A. Penal Code, Sec. 15.-02. The majority argues that corroboration of the accomplice was inadequate because there was no corroboration of the essential corpus delicti. The corpus delicti in a conspiracy is the agreement to commit a crime. *Brown v. State,* 576 S.W.2d 36, 42 (Tex.Cr. App.1979). The agreement can almost never be directly corroborated by nonaccomplice evidence unless the conspirators were unwise enough to reduce their agreement to

---

1. In footnote 2 of the majority opinion, the majority essentially takes the position that if the *same* evidence proves the existence of several extraneous offenses, all these offenses must be corroborated for any of them to be admissible. This is plainly incorrect. Assuming arguendo that proof of extraneous offenses must be corroborated, if the *same* evidence proves several extraneous offenses, one of which is corroborated and relevant, the evidence is admissible absent a showing of prejudice. If evidence of an extraneous offense is corroborated and relevant, it is admissible.

The majority argument must thus be that admission of this relevant evidence is barred because its relevance is outweighed by the prejudicial effect of bringing in other uncorroborated offenses. The balancing of relevance against prejudice has always been left within the broad discretion of the trial court deciding admissibility. No abuse of this discretion is presented here, particularly since the defense was allowed to introduce substantial evidence bearing on the weight to be given the uncorroborated aspects of Marshall's testimony on this matter.

writing. Conspiracy can generally be corroborated only by facts or circumstances showing the concert of action by the conspirators toward the unlawful goal. The accomplice in this case, Marshall, testified to the unlawful agreement and to a series of overt acts taken to realize the goal of the conspiracy. The correct viewpoint for determining whether Marshall's testimony was sufficiently corroborated is to examine whether appellant's conduct shows any parallel overt acts taken to effectuate the shared goal of defrauding the insurance company from a burning of appellant's barn.

The facts are correctly stated in the majority opinion. Marshall said he burned appellant's barn on October 10, 1975. On October 10 appellant's barn was burned. Marshall testified that he was to be paid with $3,000 of the insurance proceeds received by appellant, and that he was so paid in November of 1975. Independent evidence showed that on November 7, 1975, appellant deposited an $11,000 check from the insurance company for his loss, retaining $3,000 in cash. Finally, and most significantly, independent evidence showed that a mortgagee, Marlin Gibbs, was fraudulently deleted from the insurance policy covering the barn only one month prior to the fire. This deletion allowed appellant to collect proceeds from the fire insurance which rightfully belonged to the mortgagee. This is significant because the essential aspect of this extraneous offense is an agreement to defraud the insurance company and the wrongful deletion of the mortgagee from the policy one month before the fire is strong evidence of appellant's felonious intent. There is independent evidence to show overt acts that mesh with Marshall's actions in joint pursuit of the unlawful goal.

To be sufficient, corroborating evidence does not need to directly link the accused to the crime or independently establish guilt; it need only make the accomplice's testimony, which does connect the accused with the crime, more likely than not, *James v. State*, 538 S.W.2d 414 (Tex.Cr.App.1976); *Bentley v. State*, 520 S.W.2d 390 (Tex.Cr.App.1975), because this will then strengthen the connection between the accused and the crime. Art. 38.14, V.A.C.C.P. There is no set standard for deciding what corroboration is required; each case must be considered on its own facts. *Etheredge v. State*, 542 S.W.2d 148 (Tex.Cr.App.1976).

Given a proper understanding of the extraneous offense being proved and with due deference to the unusual nature of criminal conspiracy as an offense, there is more than enough evidence to corroborate Marshall's testimony about the agreement with appellant to defraud the insurance company by burning the barn. The correlation between Marshall's testimony on how he was to be paid and the independent evidence of how appellant utilized the insurance proceeds is analogous to the correlation between various checks and deposits which was considered sufficient to provide corroboration for an accomplice witness in *Carrillo v. State*, 566 S.W.2d 902 (Tex.Cr.App.1978). Appellant's deletion of the mortgagee from the insurance policy is further corroboration on the issue of appellant's illegal intentions. Taken together, the evidence certainly tends to make the accomplice testimony "more likely than not." Since this test was met, the extraneous offense was properly introduced before the jury. The evidence about the insurance adjuster's view of the barn burning, which is not conclusive, goes to the weight of the evidence of the extraneous offense, not to its admissibility.

No error was committed. I dissent.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge.

Rice was convicted of conspiracy to commit theft over $10,000. The jury assessed punishment at five years.

Upon original submission, a panel of this Court, with one judge dissenting, reversed

the conviction for the State's failure to corroborate adequately the testimony of an accomplice witness to an extraneous transaction which had been offered to show a continuing scheme to defraud appellant's insurance carrier. We now grant the State's motion for rehearing and affirm the judgment.

■ Because we agree with the dissenting opinion upon original submission that the extraneous transaction involved a conspiracy to commit theft which was corroborated by evidence independent of accomplice testimony, we need not reach the question of the correctness of the underlying assumption of the panel majority, that in barring a *conviction* based solely upon uncorroborated accomplice testimony, Article 38.14, V.A.C.C.P., the Legislature also barred the *admission* of such testimony relating to extraneous transactions which amount to offenses.[1]

In the instant case the offense charged consisted of a scheme to defraud appellant's insurance carrier by setting fire to appellant's place of business and collecting the insurance proceeds.

■ Evidence of a similar extraneous transaction involving appellant's barn was properly offered for two related purposes: to show that the burning of appellant's business was part of a continuing scheme to defraud the insurance carrier, and to show that appellant's intent was to collect an insurance claim upon the property.

The evidence adduced to prove the extraneous transaction comprised: the testimony of Jack Marshall, who claimed appellant offered him $3,000, to be paid out of insurance proceeds, if any, to burn the barn and that he did so and that appellant did pay him $3,000 in cash; the fact that at about the time Marshall claims to have been paid appellant received an insurance settlement of $11,000, of which he deposited $8,000 and kept $3,000–the amount Marshall claims to have received–in cash; and the fact that one month before the fire a mortgagee was removed from the policy, although subsequent investigation showed his claim still to have been valid at the time of the fire, so that the insurance carrier made a second payment upon the policy to the lien holder, in excess of their original liability upon the claim.

■ The removal of the mortgagee and failure to satisfy his claim, coupled with the retention by appellant of cash coincident in time and amount to the payoff testified to by Marshall, is sufficient to give rise to the inference that Marshall's testimony was "more likely than not", satisfying the test of *James v. State*, 538 S.W.2d 414 (Tex.Cr. App.1976), and *Bentley v. State*, 520 S.W.2d 390 (Tex.Cr.App.1975).

■ Appellant also contends that insufficient evidence was adduced to corroborate Marshall's testimony about the circumstances of the conspiracy which formed the gravamen of the complaint–the burning for insurance proceeds of Wamble's Department Store, owned by appellant.

Aside from Marshall's accomplice testimony, the State adduced, *inter alia*, evidence that appellant had taken out loans from two banks, pledging to each as collateral the inventory of Wamble's, but that appellant has signed a declaration of loss

1. The panel opinion relied upon *Wells v. State*, 118 Tex.Cr.R. 355, 42 S.W.2d 607 (1931), and upon *Lankford v. State*, 93 Tex.Cr.R. 442, 248 S.W. 389 (1923), for authority for the rule that uncorroborated accomplice testimony about extraneous transactions is inadmissible. The opinion in *Wells* does set out that rule, relying in turn upon *Lankford* but not before disposing of the evidence so admitted by holding that, under the circumstances, evidence of the extraneous transaction involved would have been inadmissible in any event, thus rendering its gratuitous second "holding" *obiter dicta*.

*Lankford* was reversed because the court refused to instruct the jury that evidence of extraneous transactions was not to be considered by them unless the defendant was proved beyond a reasonable doubt to have been implicated in them.

after the Wamble's fire which acknowledged neither of the banks as lien holder and that appellant had, within two weeks before the fire, doubled his insurance coverage on the furniture and fixtures at Wamble's and added a new policy covering Wamble's loss of profits in case of fire.

We hold that Marshall's testimony about the conspiracy to defraud the insurance carrier by burning Wamble's was sufficiently corroborated.

The State's motion for rehearing is granted, and the judgment is now affirmed.

ROBERTS, PHILLIPS and CLINTON, JJ., dissent.