Anthony D. **WILLIAMS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 10–99–188–CR.

Court of Appeals of Texas,
Waco.

March 21, 2001.

Rehearing Overruled June 6, 2001.

**628**

William Reagan Wynn, Kearney & Westfall, Ft. Worth, for appellant.

Tim Curry, Tarrant County Criminal District Attorney, Charles Mallin, Tarrant County Asst. District Attorney, Michael R. Casillas, Tarrant County Asst. Criminal District Attorney, Ft. Worth, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

VANCE, Justice.

Anthony D. Williams was indicted for capital murder. He and two fellow gang members accosted a victim on the street to rob him. During the robbery, the victim was shot and killed. Although Williams did not fire the weapon, as a co-conspirator and aider and abetter of the robbery, he was criminally responsible for the shooter's act of murder.[1]

The State sought the death penalty. However, the jury assessed punishment at life in prison. On appeal, Williams complains he should have a new trial because a requested accomplice-witness instruction under Article 38.14 of the Texas Code of Criminal Procedure was refused by the trial court regarding a co-conspirator who gave testimony against him. Finding error but no harm, we will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Williams formed a conspiracy with Eddie Johnson, Willie Jones, and Kendrick Battle to commit a series of armed robberies.[2] The group agreed to shoot their victims, if necessary. Over a two-month period thirteen robberies were committed, either by individual group members acting alone or by various combinations of the co-

---

1. The jury was instructed on the following subsections of Tex. Pen.Code Ann. § 7.02 (Vernon 1994): Criminal Responsibility for Conduct of Another:
 (a) A person is criminally responsible for an offense committed by the conduct of another if:
 . . .
 (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or
 . . .

 (b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

2. Evidence conflicted about whether D'Andre Myers was also a member of the conspiracy.

conspirators. Typically, the robberies were of individuals randomly encountered on the street in residential neighborhoods, usually outside their homes and often entering or exiting their vehicles. In the course of the spree, several victims were shot. During the thirteenth robbery, Johnson shot and killed the victim. Johnson, Williams, and Jones, but not Battle, participated in this robbery and murder.

Williams was indicted for this capital murder. The primary witnesses against him at trial were Jones and Battle. Jones reached a plea bargain in exchange for life in prison, and Battle, who was age fifteen and was not directly involved in the murder, plea-bargained for transactional immunity and spent a year with the Texas Youth Commission.[3]

Jones testified specifically about the murder in question during which Williams, Jones, and Johnson were present and Johnson was the shooter. On the day of the murder, Williams, Jones, and Johnson drove around and randomly selected two people to rob at gunpoint. During the first robbery, Williams and Johnson fired their weapons. Johnson, with Williams and Jones at the scene, committed the second robbery and shot and killed the victim.

Although not present at the murder, Battle testified about the words and conduct of Williams, Jones and Johnson after the robbery, in particular that the three were bragging, joking, and not remorseful. Battle also showed them a newspaper article about the murder, and they confirmed that they had committed the crime.

Jones and Battle also testified about the other robberies involved in the spree, which were admitted to prove that Johnson's killing of the victim "should have been anticipated" by Williams, as required by section 7.02(b). Jones said Williams brandished a weapon in several of the robberies and fired his weapon, shooting as many as three victims. Battle described the formation of the overall conspiracy, including that there was an agreement to shoot the victims if necessary. Battle said Williams initiated the discussion regarding shooting victims.

The Code of Criminal Procedure provides:

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979).

The trial court gave an accomplice-witness instruction based on this statute regarding Jones's testimony. It was a standard instruction admonishing the jury to not convict based on the testimony of Jones unless other evidence also connected Williams to the murder. However, the court denied the defense's request for an accomplice-witness instruction regarding Battle. On appeal, Williams complains that this instruction should have been given, and that he was harmed when the court failed to do so.

## THE LEGAL STANDARD AND ITS APPLICATION

 The accomplice-witness instruction is required whenever trial testimony offered by the State is elicited from an accomplice to the crime for the purpose of proving that the defendant committed the crime. *Gamez v. State,* 737 S.W.2d 315, 322 (Tex.Crim.App.1987); *Selman v. State,* 807 S.W.2d 310, 311 (Tex.Crim.App.1991).

---

3. Johnson was tried separately, convicted, and given the death penalty.

If "there exists no doubt or the evidence clearly shows that a witness is an accomplice witness as a matter of law," the court should so instruct the jury. When the witness has been indicted for the same offense as the defendant, the witness is an accomplice witness as a matter of law. *DeBlanc v. State*, 799 S.W.2d 701, 708 (Tex.Crim.App.1990). However, it is not necessary that he actually be indicted if the evidence is otherwise clear that he is an accomplice. *Blake v. State*, 971 S.W.2d 451, 455 (Tex.Crim.App.1998). Other times there may be a fact question about whether a witness is an accomplice, in which case the jury should be instructed to decide that issue. *DeBlanc*, 799 S.W.2d at 708. At trial, Williams claimed Battle was an accomplice as a matter of fact, not as a matter of law. The threshold question on appeal is whether the evidence shows Battle was an accomplice to the murder.

■■ "A person is an accomplice if he participates before, during, or after the commission of the crime and can be prosecuted for the same offense as the defendant or for a lesser-included offense." *Medina v. State*, 7 S.W.3d 633, 641 (Tex. Crim.App.1999), *cert. denied*, 529 U.S. 1102, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000) (citing *Blake*, 971 S.W.2d at 454–55). In addition, "if the witness and the accused were co-conspirators in a conspiracy to commit a felony other than the crime with which the accused is charged, the accused committed the charged offense in furtherance of that conspiracy, and the charged offense was one that should have been anticipated by the witness as a result of carrying out the conspiracy, the witness is an accomplice." *De La Rosa v. State*, 919 S.W.2d 791, 794 (Tex.App.—San Antonio 1996, writ ref'd) (citing Section 7.02(b) of the Penal Code).

The evidence was uncontested that Williams, Jones, Johnson, and Battle were in an overall conspiracy to commit robberies and had agreed to shoot their victims as needed. The State argued as much in closing statements. The robbery which is the subject of this case was the last in the series committed by the co-conspirators. Battle participated in eleven of the thirteen robberies, and possessed a gun in six of them. He may have shot one victim in the face. He also wrote rap lyrics about the string of robberies committed by the group. We believe that there is little doubt that under section 7.02(b), all four could have been indicted for the murder in question, as it was in furtherance of the conspiracy and should have been anticipated from the express terms of the conspiracy as well as from the shootings which had occurred in the previous robberies.

In its instructions to the jury, the trial court defined the conspiracy necessary to make Williams responsible for the murder committed by Johnson as the agreement between Williams, Jones, and Johnson to rob the victim who was murdered. However, the relevant conspiracy regarding the accomplice-witness rule is the overall conspiracy of which Williams, Jones, Johnson, and Battle were all members. Accordingly, under *Medina*, Battle was an accomplice because he participated in the murder before its commission by encouraging and aiding the overall conspiracy and because he could have been indicted for the murder. In addition, under *De La Rosa*, Battle was an accomplice. By being a member of the overall conspiracy, he was also responsible for acts furthering it such as the robbery and murder. Furthermore, his co-conspirator Johnson committed the murder, and Battle should have anticipated that. Therefore, under both *Medina* and *De La Rosa*, Battle was an accomplice witness subject to article 38.14.

The State's argument that Battle was not at the scene of the murder and there-

fore was not an accomplice of either Johnson or Williams overlooks the fact that it was the membership of Williams, Battle, Jones, and Johnson in the overall conspiracy that links them together for purposes of the accomplice-witness rule. Furthermore, holding Battle to not be an accomplice leads to the incongruence of Williams, Jones, Johnson, and Battle being co-conspirators and accomplices of the overall conspiracy, but only Williams, Jones, and Johnson being co-conspirators and accomplices of this murder, which was a direct result of the overall conspiracy.

Because he could have been indicted for the murder, Battle was an accomplice as a matter of law. Even if this had not been so, under *Medina* and *De La Rosa* there was at least a fact issue as to whether or not Battle was an accomplice. Therefore the trial court erred in not so instructing the jury.

### HARMFUL ERROR ANALYSIS

■ A judgment will not be reversed based on a charge error unless the error is "calculated to injure the rights of [the] defendant." Tex.Code Crim. Proc. Ann. art. 36.19. The error must be harmful. When a defendant requests an accomplice-as-a-matter-of-fact instruction, as here, the failure to give the accomplice-witness instruction is harmful only if the record shows "some harm." *Medina*, 7 S.W.3d at 642 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985)(op. on reh'g)). If there is substantial non-accomplice evidence linking the defendant to the offense, any error is harmless. *Medina*, 7 S.W.3d at 642; *compare De La Rosa*, 919 S.W.2d at 796 (based on an evaluation of the non-accomplice evidence, would a rational jury "have found the State's case significantly less persuasive had they been told that the accomplices' testimony could not be accepted without corroboration").

The appellate court must examine the record as a whole to find if it can "say with confidence that the error did not cause some harm." *Ovalle v. State*, 13 S.W.3d 774, 788 (Tex.Crim.App.2000) (the defendant does not have the burden of proof to show "actual harm").

■ The defendant's post-offense statements can be a source of this non-accomplice evidence. *Medina*, 7 S.W.3d at 642. In *Medina*, the defendant wrote two letters to a friend, post-offense, stating among other things and without ever expressly confessing to the crime: "I thought I had to always be the baddest around and I screwed myself trying in doing this," and "I was a bad boy out there, but don't let no one know. Okay? That's my big secret." The Court held that these statements along with testimony from two other non-accomplice witnesses connecting the defendant to the offense were sufficient to avoid harm.

■ Substantial non-accomplice evidence linking Williams to the murder comes from his two written statements to police after he was arrested. In the statements he admitted pointing a weapon at the victim of the robbery that immediately preceded the robbery during which the murder occurred, that he was present at the murder, and that he "had a pretty good idea" of what Johnson intended to do when Johnson exited the car with the gun just before the murder. These blatant admissions of involvement in the offense go beyond the veiled admissions of the defendant in *Medina*. In addition, the information Williams supplied in his statements about the calibers of the weapons he and Johnson used during the two robberies on the day of the murder was confirmed by ballistics tests of the bullets found at the scenes of the crimes. All this evidence, and especially the fact that it is comprised mainly of Williams's own admis-

sions, substantially links him to the murder. Therefore, the error in failing to submit the accomplice-witness instruction as to Battle was harmless.

Williams argues that the harm was in the form of a comment on the weight of the evidence when, by the giving of the instruction as to Jones, the jury was in effect told to hold his testimony suspect, but impliedly was told not to so regard Battle's testimony. Assuming *arguendo* there was a comment on the weight of the evidence, that would be true whenever the instruction is given as to some witnesses but not to others. Moreover, Williams's argument is not based on the standard for harm applicable to this issue. Employing the correct standard leads to the conclusion that there was no harm.

## EXTRANEOUS OFFENSE INSTRUCTION

The jury was instructed to consider the extraneous-act evidence about the other robberies only if it found beyond a reasonable doubt that Williams participated in or committed those robberies and then only for the limited purpose of determining whether Williams should have anticipated that the murder would be committed in the course of the conspiracy. However, in his brief, Williams points to this evidence as an additional argument that the accomplice-witness instruction should have been given.

■ There appears to be little, if any, support in the law of this State for Appellant's position that when an accomplice to an extraneous offense supplies testimony about the defendant committing the extraneous offense, an accomplice-witness instruction should be given that there must be corroborating evidence connecting the defendant to the extraneous acts. Williams cites *Wells v. State*, 118 Tex. Crim. 355, 42 S.W.2d 607 (1931), and *Bus-*

*tamante v. State*, 653 S.W.2d 846, 848–49 (Tex.App.—Corpus Christi 1982), *pet. dism'd improvidently granted*, 702 S.W.2d 193 (Tex.Crim.App.1985). However, *Bustamante* is based on *Wells*, and *Wells* was called into question in *Rice v. State*, 605 S.W.2d 895, 903 n. 1 (Tex.Crim.App. [Panel Op.] 1980)(op. on reh'g); *compare Camacho v. State*, 864 S.W.2d 524 (Tex.Crim. App.1993) (this issue was raised, but was disposed of on other grounds without being specifically addressed). The record does not show, however, that Williams requested the instruction at trial for this purpose. Rather, he requested it only regarding Battle's testimony about whether Williams was involved in the murder for which he was indicted. Consequently, he forfeited the complaint for appellate review. TEX.R.APP. P. 33.1.

## CONCLUSION

The trial court erred in not giving the accomplice-witness instruction as to Battle. However, the error was harmless. We affirm the judgment.

