NUMBER
13-09-00497-CR

 

                                        COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI
- EDINBURG

                                                                     


 

VICTOR WILLIAM BACH,                                                    Appellant,

 

v.

 

THE STATE OF TEXAS                                                                 
Appellee.

                                                                     


 

On appeal from the 107th
District Court

of Cameron County,
Texas.

                                                                     


 

MEMORANDUM OPINION

 

                      Before
Justices Garza, Benavides, and Vela

                      Memorandum
Opinion by Justice Benavides

 








            Appellant,
Victor William Bach, was found guilty of criminal conspiracy to commit murder
for hire.  See Tex. Penal Code Ann.
§ 15.02(a) (Vernon 2003).  The State sought enhancement of punishment
under the Texas Code of Criminal Procedure based on Bach’s prior felony
convictions.[1] 
After waiving jury sentencing, Bach was sentenced to thirty years’ confinement
in the Texas Department of Criminal Justice-Institutional Division.  By five convoluted
and overlapping issues, Bach contends that the evidence introduced at his trial
was insufficient to show that he:  (1) intended to murder the alleged victim;
(2) did not express an intent to completely withdraw from the conspiracy; (3)
undertook some overt act to further the conspiracy; and that (4) the evidence
was insufficient because no corroborating evidence was presented beyond the
alleged accomplice’s testimony; and (5) the trial court erred in not defining
“preponderance of the evidence” in the jury charge as it applied to Bach’s
affirmative defense of renunciation.  We affirm.

I. Background

            In
June of 2007, Mauro Sauceda and Ruth Jara were divorced.  Following their
divorce, Sauceda’s “long-time acquaintance,” Bach, was arrested for failure to
pay child support.  Before Bach’s arrest, Sauceda solicited Bach to murder his
ex-wife, Jara, with no apparent success.  After Bach was taken into custody,
Sauceda continued to solicit Bach to murder Jara and offered to pay
approximately $5,000 in Bach’s back child support so that Bach could be
released from custody.  Sauceda also offered to pay additional money as
compensation.  Sauceda testified that he paid “close to $10,000” to Bach.  This
deal was allegedly made in code over the phone where Bach said, “I’m going to
take care of the truck.  I’m going to do some repairs.”  The phone conversation
between Sauceda and Bach was recorded while Bach was in custody.[2] 
FBI agents who monitored the jail telephone conversation notified the Cameron
County Sheriff’s Department of what they believed was a plot to murder Jara. 
With the help of the Edinburg Police Department, Jara was notified and told to
take precautions while the investigation continued.  Sauceda did in fact pay
Bach’s back child support and Bach was released from custody.  Nine days later,
Bach and Sauceda were located by the police, and each was arrested on charges
of conspiracy to commit murder.  After a search warrant was executed, financial
records were found evidencing Sauceda’s payments to Bach.

            Sauceda
pleaded guilty and was sentenced to six years’ imprisonment.  During Bach’s
trial, Sauceda testified as to the circumstances surrounding the agreement, his
payment to Bach, and his expectation that Bach would go through with the
murder.  Sauceda testified that, to his knowledge, Bach had not taken any
action to effectuate the murder, but that Bach had continuously expressed his
intent to follow through and to solicit others to assist him.

            Bach
pleaded not guilty.  At trial, Bach testified that he had made an agreement
with Sauceda to murder Jara, but that he never intended to follow through with
his part of the bargain.  Bach also testified that he took Sauceda’s money as
part of the agreement because he was “desperate” to get out of jail, but claimed
that he only intended to defraud Sauceda of the money—he never intended to
carry out the murder.  Bach testified that he had renounced his intent to be
involved in the conspiracy, but did not show any evidence of a specific act of
renunciation.  Bach testified that his renunciation was evidenced by his
failure to take any action in furtherance of the agreement and the fact that he
only wanted to steal money from Sauceda. 

            The
evidence indicated that, in nine days after being released from jail, Bach had
taken no action to effectuate the murder.  There was no evidence that Bach had
attempted to contact or otherwise harm Jara, nor was there evidence that he was
in possession of a weapon at any relevant time.

            Bach
was found guilty of criminal conspiracy.  Following the verdict, Bach elected
to waive his prior jury-sentencing request.  The court sentenced Bach to thirty
years’ imprisonment.  This appeal ensued.[3]

II.  Sufficiency
of the Evidence

            A. 
Standard of Review

            The
Texas Court of Criminal Appeals has held that our only sufficiency review
should be under “a rigorous and proper application” of the Jackson
standard of review.  Brooks v. State, 323 S.W.3d 893, 906 (Tex. Crim.
App. 2010).  Under this standard, “the relevant question is whether, after viewing
the evidence in the light most favorable to the prosecution, any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.”  Jackson v. Virginia, 443 U.S. 307, 319 (1979); see
Brooks, 323 S.W.3d at 902 n.19.  “[T]he fact-finder’s role as weigher of
the evidence is preserved through a legal conclusion that upon judicial review all
of the evidence is to be considered in the light most favorable to the
prosecution.”  Jackson, 443 U.S. at 319 (emphasis in original); see
also Tex. Code Crim. Proc. Ann.
art. 38.04 (Vernon 1979) (The jury, in all cases is the exclusive judge of
facts proved and the weight to be given to the
testimony . . . .”); Wesbrook v. State, 29 S.W.3d
103, 111 (Tex. Crim. App. 2000) (“The jury is the exclusive judge of the
credibility of witnesses and of the weight to be given testimony, and it is
also the exclusive province of the jury to reconcile conflicts in the
evidence.”)

            Sufficiency
of the evidence is measured by the elements of the offense as defined by a
hypothetically correct jury charge.  Adi v. State, 94 S.W.3d 124, 131
(Tex. App.–Corpus Christi 2002, pet. ref’d).  Under a hypothetically correct
jury charge, the State was required to prove beyond a reasonable doubt that
Bach:  (1) with intent to commit a felony; (2) agreed with Sauceda that one or
both of them engage in conduct that would constitute murder; and (3) he or Sauceda
performed an overt act in pursuance of the agreement.  See Tex. Penal Code Ann. § 15.02(a)
(Vernon 2003).  Intent may “be inferred from circumstantial evidence such as
acts, words, and the conduct of the appellant,” and “[a]n agreement
constituting a conspiracy may be inferred from acts of the parties.”  Tex. Penal Code Ann. § 15.02(b)
(Vernon 2003); cf. Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim App.
2004).  Thus, “the corpus delicti of conspiracy is the agreement and an overt
act in furtherance thereof.”  McCann v. State, 606 S.W.2d 897, 898 (Tex.
Crim. App. 1980).  However, a defendant charged with criminal conspiracy may
not be convicted on the basis of the uncorroborated testimony of a
co-conspirator.  Tex. Code Crim. Proc.
Ann. art. 38.14 (Vernon 2005).  We also note that a “conspiracy to
commit a crime is a separate and distinct crime from the substantive or
‘object’ offense.  Commission of the substantive offense is not an essential
element of the conspiracy charged.”  McCann, 606 S.W.2d at 898.

            B. 
Analysis

            By
his first and third issues, Bach contends that the State presented insufficient
evidence to show that he intended to murder Jara or to show that he performed
an overt act in pursuance of the agreement.  For this contention, Bach relies
on his testimony that he only intended to steal money from Sauceda, and never
intended to commit the murder, and further, that he never made any attempt to
find, contact, or in any way harm Jara.  However, we find the following
evidence that, when combined, could be construed by a rational juror to
contradict Bach’s testimony, and thereby allow the jury to infer that the
agreement was one in which Bach’s intent was to commit a felony:  (1) Sauceda
testified that Bach had continuously maintained that he would go through with
the murder; (2) Bach conceded at trial that he did agree to murder Jara; (3)
Bach admitted at trial that he accepted between five and ten thousand dollars
in exchange for agreeing to commit the murder; and (4) Bach spoke in code about
the murder while he was in jail, saying that he was going to “take care of the
truck” and “do some repairs” in exchange for money.  We believe that this
evidence, when viewed in the light most favorable to the prosecution, was
sufficient to allow the jury to find all of the essential elements of the crime
beyond a reasonable doubt.  See Jackson, 443 U.S. at 319; see
also McCurry v. State, No. 11-05-00387-CR, 2007 Tex. App. LEXIS 4617,
at *4-5 (Tex. App–Eastland June 14, 2007) (mem. op., not designated for
publication) (holding that the defendant’s statements alone were sufficient
evidence to uphold a conspiracy to commit capital murder conviction, despite
the fact that the defendant “denied the intention to harm” the intended
victim).  Specifically, this evidence was sufficient to allow the jury to infer
Bach’s intent to carry out the object of the conspiracy, and though this
evidence was contested, it was within the province of the jury to resolve this
conflict.  See Tex. Penal Code Ann.
§ 15.02(b); Wesbrook, 29 S.W.3d at 111.  Additionally, the evidence
showing that Bach accepted and spent money as part of the agreement was
uncontroverted, and this is a sufficient “overt act in pursuance of the
agreement” to satisfy the “overt act” requirement of criminal conspiracy.  See
Tex. Penal Code Ann.
§ 15.02(a)(2); Brown v. State, 576 S.W.2d 36, 42 (Tex. Crim App.
1978) (adopting the State’s contention that, among other acts of the defendant,
“[t]he act of accepting payment to kill an individual . . . must
certainly be considered to be [an] overt act[] in pursuance to the
agreement”).  Therefore, we overrule Bach’s first and third issues.

III. 
Renunciation Defense

By
his second issue, Bach contends that there was insufficient evidence to show
that he had not renounced his involvement in the conspiracy.  Renunciation,
however, is an affirmative defense to criminal conspiracy, not an element of
the offense.  See Tex. Penal Code
Ann. § 15.04(b).  “A defendant bears the full burden of proof on an
affirmative defense under Penal Code section 2.04.”  Madrid v. State,
595 S.W.2d 106, 110-11 (Tex. Crim. App. [Panel Op.] 1979); see also Tex. Penal Code Ann. § 2.04(d)
(Vernon 2003) (“If the issue of the existence of an affirmative defense is
submitted to the jury, the court shall charge that the defendant must prove the
affirmative defense by a preponderance of evidence.”).  Therefore, the burden
to prove the elements of this affirmative defense was placed on Bach, and the
State was not required to show any evidence to negate this defense.  See Adi,
94 S.W.3d at 131 (noting that sufficiency of the evidence is measured by
the elements of the offense).  Additionally, Bach clearly did not meet his
burden on the renunciation defense, as he offered no evidence whatsoever that
he had taken “further affirmative action” to prevent the commission of the
object offense as required by the penal code.  See Tex. Penal Code Ann. § 15.04(b). 
Accordingly, we overrule Bach’s second issue.

III. 
Accomplice Witness Rule

            By
his fourth issue, Bach contends that the evidence for each element of the
offense was provided solely from the testimony of Sauceda and was not
corroborated by independent evidence connecting him with the commission of the
conspiracy as required by the code of criminal procedure.  See Tex. Code Crim. Proc. Ann. art. 38.14; Rice
v. State, 605 S.W.2d 895, 897-98 (Tex. Crim. App. 1980).  “If the combined
weight of the non-accomplice evidence tends to connect the defendant to the
offense, the requirement of Article 38.14 has been fulfilled.” Cathey v.
State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999) (citing Gosch v. State,
829 S.W.2d 775, 777 (Tex. Crim. App. 1991)).  As we have previously noted, the
uncontested evidence that Bach accepted payment as a part of the agreement is non-accomplice
corroborating evidence as to every element of the offense—namely that Bach (1)
with felonious intent, (2) entered into an agreement to commit murder and (3)
performed an overt act in furtherance of that agreement.  No further
evidentiary analysis is necessary, as any independent corroboration that merely
“tend[s] to connect the accused with the extraneous offense” is sufficient to
overcome the accomplice witness rule.  Rice, 605 S.W.2d at 898. 
Nonetheless, the elements of the offense were also shown by Bach’s own
testimony, by testimony regarding Bach’s recorded prison conversations, and by
financial records obtained during execution of search warrants for the
conspirators’ homes.  Accordingly, we overrule Bach’s fourth issue.  

IV.  Jury
Charge

By
his fifth issue, Bach argues that the trial court erred by not including an
instruction on the definition of “preponderance of the evidence” in the jury
charge as it related to his affirmative defense of renunciation.  

“Our
first duty in analyzing a jury-charge issue is to decide whether error exists. 
Then, if we find error, we analyze that error for harm.”  Ngo v. State,
175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (citing Middleton v. State,
125 S.W.3d 450, 453 (Tex. Crim. App. 2003)).  The degree of harm required to
reverse the trial court’s judgment depends on whether or not the appellant
objected to the charge before it was given to the jury.  Id.  Under Almanza
v. State, if the defendant has properly objected to the charge, we need
only find “some harm” to reverse the trial court’s judgment.  Id. at
743-44 (citing Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1985) (op. on reh’g)).  When the defendant fails to object, however, or states
that he has no objection to the charge, “we will not reverse for jury-charge
error unless the record shows ‘egregious harm’ to the defendant.”  Id.

The
jury charge in this case clearly includes the instruction that Bach claims the
trial court erred in excluding.  In pertinent part, page 5 of the jury charge
reads:

It is an
affirmative defense to this prosecution if, under circumstances manifesting a
voluntary and complete renunciation of his criminal objective, the defendant
withdrew from the conspiracy before commission of the object offense and took
further action that prevented the commission of the object offense.

 

In order for
you to consider an affirmative defense, the defense must be established by a
preponderance of the evidence.  The term “preponderance of the evidence,” as
used herein, means the greater weight and degree of credible testimony or
evidence introduced before you and admitted in evidence in the case.

 

By including
this definition, the court sufficiently explained the meaning of “preponderance
of the evidence” so as to allow the jury to properly resolve the issues.  See
Thomas v. State, 474 S.W.2d 692, 695 (Tex. Crim. App. 1972).  Therefore, we
find no error, and we overrule Bach’s fifth issue.

V.  Conclusion

            Finding
no meritorious issue on appeal, we affirm the trial court’s judgment.

 

 

________________________

GINA
M. BENAVIDES,

Justice

 

Do not publish.

Tex. R. App.
P.47.2(b)

 

Delivered and filed the

10th day of March, 2011. 

 

 









[1] Bach had previously served prison terms for two separate
third-degree felony DWI convictions and an eight-year prison term for burglary.
 See Tex. Code Crim. Proc. Ann. art. 12.42 (Vernon 2005) (enhancement statute).  





[2] The telephone recordings were not
entered into evidence at Bach’s trial.





[3]  After receiving a copy of the
State’s Reply Brief in this case, Bach filed a pro se motion to abate this
appeal.  The State, on April 29, 2010, filed a Motion to Strike Appellant’s
Pro-se Motion to Abate.  On May 6, 2010, we denied Bach’s motion to abate the
appeal.  The State’s motion, which was never ruled upon, is dismissed as moot.