Albert BROUSSARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 47163.

Court of Criminal Appeals of Texas.

Feb. 6, 1974.

Rehearing Denied Feb. 27, 1974.

Carver & Carver, Beaumont, for appellant.

Tom Hanna, Dist. Atty., John R. DeWitt, Asst. Dist. Atty., Beaumont, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

The appellant was indicted for the offense of attempted burglary, with two prior felony convictions alleged for enhancement under Article 63, Vernon's Ann.P.C. After the jury found him guilty, he elected to have the court assess his punishment. The court found that the enhancement allegations of the indictment were true and sentenced him to life imprisonment.

The appellant's first ground of error urges that he should have been granted a mistrial because of a newspaper article which appeared in the morning edition of the Beaumont Enterprise of May 17, 1972. The article stated that the appellant had been convicted and sent to prison on six previous occasions and briefly summarized some of the evidence which had been presented at that point in the trial.

At the hearing held on appellant's motion, it was stipulated that Mrs. Ruth Leaf, who was one of the jurors in the case, had read the above-mentioned article prior to the time the defense began its presentation of evidence. Herman Elmore, who was also a juror, testified, and presented an affidavit to the effect that, during the jury's deliberation, a female juror brought up the question of the appellant's failure to testify. He stated that immediately following this remark another female juror stated that "he . . . didn't testify because he had been in trouble with the law before."

However, Mr. Elmore also testified that, immediately after the remarks were made, the foreman instructed the members of the jury that they must not consider matters not raised in court. See Greenwood v. State, 157 Tex.Cr.R. 58, 246 S.W.2d 191 (1952). Thereafter, there was no discussion of the remarks, and there is no evidence in the record that any juror changed his or her position because of them.

■ The mere mention of an accused's failure to testify, if promptly suppressed, will not of itself cause the verdict to be set aside. See Howard v. State, 484 S.W.2d 903 (Tex.Cr.App.1972) and cases there cited. Neither does the mere mention of a prior conviction of the accused necessarily constitute such jury misconduct as to entitle the accused to a new trial. See Garver v. State, 158 Tex.Cr.R. 585, 258 S.W.2d 812 (App.1953) and Gonzales v. State, 501 S.W.2d 644 (Tex.Cr.App.1973).

■ While it is the better practice that the jury during the trial of the case be told not to listen to or view accounts of the trial, such becomes reversible error only when the accused is injured or prejudiced thereby. See Banner v. State, 154 Tex.Cr.R. 153, 225 S.W.2d 975 (1950); also see Hice v. State, 491 S.W.2d 910 (Tex.Cr.App.1973). In the instant case, in view of the fact that the improper remarks were promptly suppressed, and in view of the fact that they were not discussed or considered, the appellant has failed to show such prejudice or injury as to require reversal of this case.

The appellant also contends that he should have been granted a mistrial for the

reason that the jury considered his failure to testify. What we have said in the discussion of appellant's first ground of error disposes of this contention.

In a third ground of error urging jury misconduct, the appellant contends that he was prejudiced when the jurors received other evidence after they had retired for deliberation. The record from the hearing on appellant's motion for new trial reveals that during the jury's deliberations one of the jurors (Elmore) speculated about the testimony of appellant's defense witness. That witness, who had been arrested with appellant, was standing some distance from the site of the burglary apparently acting as a "look-out." His testimony was that he was merely walking toward a tavern across the street. There was also testimony that a chain-link fence was located on the premises. It was Elmore's speculation that perhaps the witness was walking toward the tavern and had taken a circuitous route in order to avoid the fence. At this point, according to his affidavit, a female juror stated that the witness' statement could not be true because she had been to the scene and had observed that the fence would not have blocked the witness' path to the tavern.

 Elmore also testified that the foreman immediately told the jurors that they could not consider this information, and that there was no discussion of it. In view of the fact that there was no discussion of the remark and the fact that the jurors were promptly instructed not to consider it, we perceive no error. See Williams v. State, 170 Tex.Cr.R. 595, 343 S. W.2d 263 (1961); Marquez v. State, 172 Tex.Cr.R. 363, 356 S.W.2d 797 (1962); Wilson v. State, 171 Tex.Cr.R. 573, 352 S. W.2d 114 (1961); and Martin v. State, 400 S.W.2d 919 (Tex.Cr.App.1966). Additionally, it appears that there was testimony about the location of the fence during the trial and a map of the scene, showing the fence, was drawn on a chalk board for the jury's benefit. See and compare McLane v. State, 379 S.W.2d 339 (Tex.Cr.App. 1964). We do not mean to condone such "private viewings" of the scene by members of the jury; however, there was no reversible error in this instance. See McLane v. State, supra.

The appellant also urges that during the final argument the prosecuting attorney made a statement which amounted to a comment on his failure to testify. The transcript of the final arguments reflects the following statement made by appellant's counsel:

"Now I would like to also like [sic] to mention to you that our client has a constitutional right not to take the stand and testify. This does not necessarily mean he's trying to hide something or be evasive, but in this particular case, on the advice of his counsel he is not taking the stand to testify, and we would ask you not to consider or use this against him."

Later, appellant's co-counsel stated:

"Now when this charge says that you are not to consider the defendant not testifying for any purpose, it means exactly that, and all of you swore to do your duty. Now this man on the stand is exposed to a skilled prosecutor, and he's not very smart. This one is not. But this man is, and he is good, and he would just cut him to pieces and he would probably convict him on something else other than what he's charged with here. And you mustn't do that, either. You saw what he tried to do with Leroy [a defense witness]. He wants you to convict Leroy of other things except what he's charged with in his case, and I'm asking you not to let him do it."

During his closing remarks, the prosecutor responded to the latter charge above with the following:

". . . The Judge has told you, on the second to last page, that this man

didn't testify, and you can't take that as a circumstance against him. You see? Now, Mr. Carver, both of them get up and they say why he didn't testify, because they didn't want him to testify, because they didn't want to expose him to a rigorous cross-examination, see; by me—good old prosecutor, me, I'm gonna tear him up if I can. If he would tell the truth, nobody could tear him up—nobody."

It would appear that this statement was merely a response to the later assertion of appellant's co-counsel. The argument was invited. See Sennette v. State, 481 S.W.2d 827 (Tex.Cr.App.1972) and cases there cited. The record also reflects that appellant's counsel made only a general objection to the above statement and immediately requested a mistrial which the court refused to grant. No ruling on the objection was secured and no instruction to disregard was sought. See Powell v. State, 475 S.W.2d 934 (Tex.Cr.App.1972). There was no error.

Appellant's last ground of error urges that his motion for new trial should have been granted because of a letter,[1] sent by the assistant district attorney who tried the case, to each member of the jury. The letter was mailed on May 18, 1972, following the verdict of guilty. Appellant contends that the letter, written as it was upon official, sealed, stationery, was calculated to impress the former jurors that it was the official position of the State that they not talk with appellant's counsel. He also contends that the wording of the letter implied that they might be guilty of an offense if jury misconduct had, in fact, occurred.

While we are inclined to agree with appellant that the overall effect of the language in this letter was very improper,[2] especially in view of the fact that several jurors gave the letter as a partial reason for refusing to talk with appellant's counsel, yet we do not believe the impropriety requires reversal in this case. The record of the hearing on the motion for new trial reflects that the appellant was able to contact jurors who were willing to voluntarily cooperate with him. His attorneys adduced a considerable amount of evidence at the hearing and there is no showing that appellant lost important testimony as a result of the letter. While we have no doubt as to the impropriety involved in the sending of this letter, the record simply fails to reflect any real injury to the appellant as a result of it.

The judgment is affirmed.

DOUGLAS, J., concurs in the result.

---

1. The letter, on the official stationery of the Beaumont District Attorney's office read thus:
"RE: State of Texas vs. Albert Broussard
Dear Mr. _____:
I want to initially thank you very much for the verdict you returned in this case. It is our opinion that a dangerous criminal can be removed from our community as a result of your verdict.
I want to remind you that the defendant has given notice of appeal. One of the possible grounds he may allege is jury misconduct. In this connection, you will remember that the Judge instructed you that you could discuss your jury deliberations with any person if you desire to do so. I anticipate that you will be contacted shortly by either the defense attorneys involved in this case, or their investigator. It is our suggestion that you decline to discuss the case, or your deliberations with them.
Should you have any questions at all concerning the future of this case, please contact us at once.
Sincerely,
/s/_____"

2. Art. 2.01, V.A.C.C.P., states, in part:
". . . It shall be the primary duty of all prosecuting attorneys . . . not to convict, but to see that justice is done. They shall not suppress facts or secrete witnesses capable of establishing the innocence of the accused."
Also see State Bar of Texas Committee on Interpretation of Canons of Ethics, Opinion #26, (April, 1950).