John C. ECKERT, Appellant,

v.

The STATE of Texas, Appellee.

No. 60932.

Court of Criminal Appeals of Texas, Panel No. 2.

Oct. 21, 1981.

Rehearing Denied Nov. 25, 1981.

Travis D. Shelton, Dale Jones, William R. Moss, Lubbock, Jack Lee, Mason, W. Keaton Blackburn, Junction, for appellant.

Ronald Sutton, Dist. Atty., Junction, Aubrey D. Stokes and Max Parker, Sp. Prosecutors, San Angelo, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, CLINTON and TEAGUE, JJ.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for criminal conspiracy to commit murder. Punishment was assessed at five years' confinement, and seven years probation was granted by the court.

Five grounds of error are urged on appeal: (1) that the testimony of an accomplice witness was not sufficiently corroborated, (2) that the charge to the jury was fundamentally defective, (3) that a motion for change of venue was erroneously overruled, and (4) and (5) that the jury received "other evidence" during deliberations entitling appellant to a new trial under Article 40.03(7), V.A.C.C.P.

## PART I

We first consider the sufficiency of the corroborating evidence.[1] The testimony at trial establishes the following facts. Appellant was the owner of a livestock auction and the employer of the accomplice witness, Emiliano Tineo. Willard Jordan owned a competing auction and was the intended victim of shots fired in the early evening of March 31, 1976. Jordan testified that he received a phone call on that morning from a caller urging him to examine some cattle near London, Texas. Jordan followed the directions given to him which led him to the Wardlaw Ranch. While slowly driving through the area where the cows were to have been, he turned and noticed a man preparing to fire a rifle at him. As a shot was fired he sped away without injury.

Based upon Jordan's description of the gunman, authorities apprehended Tineo, who confessed to the shooting and led authorities to the hidden rifle he had used. Tineo's statement incriminated the appellant by stating that his employer had offered to pay him $5000 to shoot Jordan and had provided him with the rifle. Additionally, appellant had taken Tineo to the scene of the shooting the day before the offense as well as on the 31st. Tineo identified the appellant at trial.

■ The testimony of an accomplice witness is untrustworthy and should be received and viewed with caution. *Walker v. State*, 615 S.W.2d 728 (Tex.Cr.App.). To test the sufficiency of the corroboration, the testimony of the accomplice is eliminated from consideration and the evidence of the other witnesses is examined to ascertain if there is any inculpatory evidence that tends to connect the accused to the commission of the offense. *Infante v. State*, 612 S.W.2d 603 (Tex.Cr.App.); *Edwards v. State*, 427 S.W.2d 629 (Tex.Cr.App.). Applied to this case, we must examine the non-accomplice testimony to determine if there is evidence tending to connect the appellant to the commission of the conspiracy.

■ The corroborative testimony need not directly link the accused to the crime or be sufficient in itself to establish guilt. Otherwise, the testimony of the accomplice would be valueless. *Carillo v. State*, 591 S.W.2d 876 (Tex.Cr.App.); *Reynolds v. State*, 489 S.W.2d 866 (Tex.Cr.App.); *Runkle v. State*, 484 S.W.2d 912 (Tex.Cr.App.). The corroboration need only make the accomplice's testimony "more likely than not." *Carillo*, supra at 883; *James v. State*, 538 S.W.2d 414 (Tex.Cr.App.); *Bentley v. State*, 520 S.W.2d 390 (Tex.Cr.App.). Further, it is not necessary to corroborate the accomplice in all of his testimony. *Walker*, supra; *Edwards v. State*, 427 S.W.2d 629 (Tex.Cr.App.).

■ The evidence in the instant case establishes that the .22 rifle that had fired the shell recovered at the scene was positively identified as belonging to appellant. Additionally, the testimony reflects that the slug which was taken from Jordan's truck was probably a .22. Although this evidence does not directly establish appellant's guilt in entering into an agreement with Tineo to execute the murder, it certainly "tends" to connect him with the offense, *McCue v. State*, 75 Tex.Cr.R. 137, 170 S.W. 280, and renders Tineo's testimony that appellant gave him the rifle with which to fire at Jordan more likely than not.

The record also contains other incriminating circumstances that combine with appel-

1. Article 38.14, V.A.C.C.P., provides:

"A conviction cannot be had upon the testimony of an accomplice witness unless corroborated by other evidence tending to connect the defendant with the offense committed and the corroboration is not sufficient if it merely shows the commission of the offense."

lant's connection to the weapon to satisfy the test for corroboration. Appellant testified that Tineo had worked for him for only two weeks before the shooting occurred. He told appellant he needed money for a trip to Houston and asked him two days before the shooting if he had any work that he could do alone. Appellant's statement related that he took Tineo to his father-in-law's ranch on March 30th, picked him up on the following afternoon and let him off on the road near Mason because Tineo wanted to visit a friend. Tineo had not been paid and had none of his belongings at the time he was later apprehended by the sheriff.

Additionally, witness Stewart testified that ten days before the shooting, he saw appellant about one mile north of the Wardlow Ranch pens. Appellant stated that he was in the area to view some cattle and sought directions to the pens, indicating that he was lost. The remote area to which Stewart directed appellant was the same as where the shooting occurred. Also, appellant had been to the same ranch one week earlier, suggesting he would not have been ignorant of how to get there. Jordan's testimony that the directions to the scene of the attempted murder were related to him the morning of March 31st by a voice that was "definitely Anglo" shows that someone besides Tineo, who spoke no English, was involved.

Appellant has urged that *Walker v. State,* supra, is controlling and supports reversal of his conviction. In *Walker,* however, the facts before us were clearly insufficient to sustain a conviction. There, this Court refused to consider evidence that the police recovered a rifle pursuant to the accomplice's directions as tending to connect the defendant to a murder. There was absolutely no connection between the weapon and the use of that weapon by the defendant to murder the deceased. In contrast, the weapon recovered here was positively identified as belonging to appellant. In *Walker,* the rifle was stolen and even if there was evidence to connect the defendant to the rifle, the connection was to the extraneous offense of theft and not to the commission of a murder. Furthermore, the bullets recovered from the victim in *Walker* could not be sufficiently correlated to the recovered weapon and the record established that the bullets could have been fired from eight different models of .22 caliber rifles. This variance is clearly distinguishable from the strength and quantum of corroborative evidence in the instant case. The non-accomplice evidence here tends to connect appellant to the offense.

The evidence is sufficient to corroborate the accomplice witness. We overrule the ground of error.

## PART II

■■■ Appellant objects to the charge to the jury contending that the trial court erroneously shifted the burden of proof to appellant by failing to separately charge each element of the offense of a conspiracy to commit murder. Essentially, the argument is that the charge may not apply the burden of proof beyond a reasonable doubt to the essential elements of an offense in a single paragraph. The contention is meritless. The court adequately enunciated the elements of the offense, applied them to the facts as alleged in the indictment and instructed the jury on the necessity of proving each element of the offense beyond a reasonable doubt.[2] There is no requirement

2. In addition to separately reciting the elements of the offense as well as the appropriate definitions and defenses, the charge to the jury includes, at Part 5:
   "Therefore, if you believe from the evidence beyond a reasonable doubt, that on or about the 31st day of March, 1976, in Kimble County, Texas, the Defendant, John C. Eckert, did then and there, with the intent that a felony, to-wit, murder, be committed, agree with Emiliano Tineo that the said Defendant and Emiliano Tineo engage in conduct that would constitute said offense of murder, to-wit: that the said Emiliano Tineo would kill Willard Jordan by shooting him with a firearm, and that Emiliano Tineo did perform an overt act in persuance of said argument by shooting at Willard Jordan with a firearm, then you will find the Defendant guilty.
   "If you do not so believe, or if you have a reasonable doubt thereof, you will find the Defendant not guilty."

that the burden of proof should be applied by the court's charge to each element in a separate and distinct manner. A reading of the entire paragraph in the context of the charge as a whole requires that the jury find each and every element of the offense beyond a reasonable doubt. Additionally, the charge does not enlarge upon the allegations in the indictment. Compare *Infante v. State*, 612 S.W.2d 603 (Tex.Cr. App.); *Perkins v. State*, 528 S.W.2d 598 (Tex.Cr.App.); and *Moore v. State*, 140 Tex. Cr.R. 482, 145 S.W.2d 887. See also *Sifford v. State*, 511 S.W.2d 526 (Tex.Cr.App.).

## PART III

Appellant next asserts that the trial court abused its discretion in overruling his motion for change of venue. Appellant contends that he could not obtain a fair trial in Kimble County because of vicious and false rumors that were circulating in the area. This contention is not supported by the record.

■ Appellant's motion for change of venue was properly accompanied by affidavits,[3] which were controverted by the State.[4] The filing of the controverting affidavits raised an issue of fact which was decided adversely to appellant when his motion was overruled following a hearing on the issue. *McManus v. State*, 591 S.W.2d 505 (Tex.Cr.App.); *Demouchette v. State*, 591 S.W.2d 488 (Tex.Cr.App.). When the trial court is presented with conflicting evidence, appellant must demonstrate an abuse of discretion on appeal. *Brandon v. State*, 599 S.W.2d 567 (Tex.Cr.App.); *Von Byrd v. State*, 569 S.W.2d 883 (Tex.Cr.App.); *Freeman v. State*, 556 S.W.2d 287, cert. den., 434

U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 794. The test to be applied is whether outside influences affecting the community climate of opinion as to a defendant are inherently suspect. *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600; *McManus*, supra; *Adami v. State*, 524 S.W.2d 693 (Tex.Cr.App.); *Morris v. State*, 488 S.W.2d 768 (Tex.Cr.App.). Clearly, this standard does not require that jurors be totally ignorant of the facts and issues and "... scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case." *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751; *Adami*, supra.

■ We have considered the voir dire examination of the prospective jurors, the evidence introduced at the pre-trial hearing and the contents of the newspaper and radio coverage and find no evidence to demonstrate an abuse of discretion. Although a majority of the prospective jurors had heard or read of the case, the record includes testimony that the case would be tried strictly on the evidence before them and that a verdict would be based upon what was heard and observed in the courtroom. *Von Byrd*, supra; *Adami*, supra; *Freeman*, supra. At the hearing appellant called several witnesses who related various rumors that had been circulating in Kimble County. However, most of the witnesses also related that even they could not remember the details of the stories and publications and that the conversation had dwindled considerably. The testimony by some of the defense witnesses that the appellant could not get a fair and impartial trial was directly contradicted by the testimony

**3.** Appellant's motion is required by Article 31.03:

    (a) A change of venue may be granted in any felony or misdemeanor case punishable by confinement on the written motion of the defendant supported by his own affidavit and the affidavit of at least two credible persons, residents of the county where the prosecution is instituted, for either of the following causes, the truth and sufficiency of which the court shall determine:

    1. That there exists in the county where the prosecution is commenced so great a

prejudice against him that he cannot obtain a fair and impartial trial. . . .

**4.** Controverting affidavits are authorized under Article 31.04:

    The credibility of the persons making affidavit for change of venue, or their means of knowledge, may be attacked by the affidavit of a credible person. The issue thus formed shall be tried by the judge, and the motion granted or refused, as the law and facts shall warrant.

presented by the State. Finally, the newspapers and radio accounts concerning the case appear to be accurate, informative and objective, not inflammatory or prejudicial. *Demouchette v. State*, supra; *McManus*, supra; *Bell v. State*, 582 S.W.2d 800 (Tex.Cr. App.). Appellant has failed to demonstrate that he did not receive a fair trial by an impartial jury free from outside influence.

### PART IV

Finally, appellant urges that the trial court erred in overruling his motion for new trial under Article 40.03(7), V.A.C.C.P.,[5] because the jury received "evidence" during deliberations that accomplice Tineo had been convicted for his participation in the offense, and "evidence" in the form of prejudicial coercive instructions from the foreman to continue deliberations. Each contention is without merit.

■■■ In order for a new trial to be mandated because the jury received other evidence during deliberations, a two-prong test must be satisfied: (1) the evidence must have been *received* by the jury, and (2) it must be detrimental or adverse to the defendant. *Hunt v. State*, 603 S.W.2d 865 (Tex.Cr.App.); *Trevino v. State*, 582 S.W.2d 111 (Tex.Cr.App.). Once the two elements of the statute are satisfied, the ruling of the trial court is examined in light of whether the testimony regarding the receipt of detrimental evidence was controverted by the State. Where the testimony introduced at the hearing on a motion for new trial reflects conflicting evidence regarding jury misconduct, an issue of fact is raised and there is no abuse of discretion if the motion for new trial is overruled. *Alexander v. State*, 610 S.W.2d 750 (Tex.Cr. App.); *Hunt*, supra; *McCartney v. State*, 542 S.W.2d 156 (Tex.Cr.App.). If the evidence as to what occurred during deliberations is *not* controverted, however, and shows that the jury in fact received addi-

tional adverse testimony, there is no issue of fact for the trial court's determination and the statute requires a new trial. *Hartman v. State*, 507 S.W.2d 557 (Tex.Cr.App.); *Rogers*, supra; *Alexander*, supra. Therefore, in absence of conflicting evidence, the per se rule applies and the mandate of Article 40.03(7) requires reversal.

■■■ In the instant case the testimony of several jurors that the accomplice's conviction was mentioned during deliberations is undisputed. Appellant therefore relies on the application of the per se rule due to the failure of the State to controvert that testimony. However, the mandate of the statute is triggered only by the initial satisfaction of both prongs of the test under Article 40.03(7); that is, actual receipt of the additional information in addition to adversity.

Here, it is the first prong of the test that has not been satisfied. As we stated in *Stephenson*, supra at 176:

"... a new trial for receipt of other evidence is not required every time something is mentioned among the jurors that is not supported by the evidence."

The mere mention of the accomplice's conviction when immediately followed by instructions that it should not be discussed is not such misconduct as would require a new trial. *Heredia v. State*, 528 S.W.2d 847 (Tex.Cr.App.); *Broussard v. State*, 505 S.W.2d 282 (Tex.Cr.App.); *Brown v. State*, 516 S.W.2d 145 (Tex.Cr.App.). The effect of the corrective instruction by a member of the jury or the court is similar to the corrective action of an instruction to disregard evidence improperly introduced at trial. *Broussard*, supra; *Thompson v. State*, 486 S.W.2d 343 (Tex.Cr.App.); *Howard v. State*, 484 S.W.2d 903 (Tex.Cr.App.). In *Broussard*, a juror related his speculation about the basis and validity of a defense witness' testimony based on the personal observation of the scene of the crime by that juror. The disposition of the ground

---

5. Article 40.03(7), V.A.C.C.P., provides in pertinent part:

"New trials, in cases of felony, shall be granted the defendant for the following causes, and for no other:

"...

"(7) where the jury, after having retired to deliberate upon a case, has received other evidence; ..."

of error by this Court in *Broussard* controls the instant case:

"In view of the fact that there was no discussion of the remark and the fact that the jurors were promptly instructed not to consider it, we perceive no error."

The record before us reflects that juror Gifford testified at the hearing on the motion for new trial that the fact of Tineo's conviction had been mentioned only once and, in Gifford's words: "... we all nearly jumped down her throat on it." The other jurors immediately stated that the conviction could not be considered and the issue was not raised again. Such a passing remark, followed by rejection of the other jurors does not constitute *"receipt"* of other evidence so as to require a new trial.

Appellant places heavy reliance on the case of *Alexander v. State,* supra, where a marihuana conviction was reversed due to receipt of adverse evidence during deliberations. The affidavit detailed the manner in which harmful evidence was received and discussed by the jury during the penalty stage of the trial. One juror, who knew the defendant, told the jurors that had he been called as a character witness he would have said his character as a peaceable and law abiding citizen was bad. A discussion of the defendant's bad reputation then followed and the issue was sharply drawn, since the defendant had called several witnesses to testify that his reputation was good. This Court reversed the conviction, relying on the per se mandate of Article 40.03, supra, where the State fails to controvert the testimony as to what occurred in the jury room. However, the notable distinction between the facts in *Alexander* and the record presently before the court is that the discussion in the former case was more than a passing remark, and was not immediately followed by corrective instructions to disregard the information.

■ Appellant's second contention under Article 40.03(7), supra, is that the jurors received prejudicial and coercive instructions from the foreman during deliberations. During the hearing on the motion for new trial, several jurors testified that after the initial vote they were unable to reach a unanimous verdict. Subsequently, a note was sent informing the judge of this fact. The bailiff returned with a message to the foreman from the judge and the jurors were told that they should continue deliberating because the trial had been long and expensive. Another vote was taken and a unanimous verdict of guilty was reached.

Appellant relies on the testimony of juror Eidson who stated that although she did not feel there was sufficient evidence to convict, she changed her vote from not guilty to guilty because she construed the foreman's instructions as having come from the court: "that the minority better get with the majority." Eidson's interpretation of the instruction to continue deliberations was controverted by the testimony of juror Parker. He stated that the jurors were told that they needed to reach a unanimous verdict and that he understood this to mean unanimous one way or the other, not necessarily in favor of guilt. Further, the fact that the trial had been a long and expensive one had been mentioned earlier. We conclude that the comment regarding the necessity of a unanimous verdict did not constitute "other evidence" and indeed this fact had been included in the court's charge.

By relying on juror Eidson's testimony, the appellant is impermissibly attempting to explain or impeach the verdict of a juror by showing the reason for the conclusion reached and the mental processes by which the jury arrived at its verdict. *Daniels v. State,* 600 S.W.2d 813 (Tex.Cr.App.); *Berry v. State,* 588 S.W.2d 932 (Tex.Cr.App.); *Arnold v. State,* 486 S.W.2d 345 (Tex.Cr.App.). A jury verdict may not be impeached in this manner. The jury was not held for an unreasonable amount of time and no abuse of discretion has been demonstrated. *Arrevelo v. State,* 489 S.W.2d 569 (Tex.Cr.App.).

The grounds of error are overruled.

The judgment is affirmed.

CLINTON, Judge, concurring.

Though then solving a somewhat different problem in *Brown v. State,* 576 S.W.2d

36, 42 (Tex.Cr.App.1979, Opinion on Rehearing), the Court noted and found:

> "Section 15.02 holds that a person commits criminal conspiracy when, with felonious intent, he *agrees* with one or more persons to commit an offense and then one of the group does an overt act in pursuance of the agreement. Thus, the corpus delicti of conspiracy must contain a showing of *agreement* to commit a crime." *Id.,* at 42. [Emphasis by the Court.]

Such an agreement with intent that a particular felony be committed, called a "positive agreement" under the former penal codes,[1] is the sine qua non of the offense of criminal conspiracy, and the common law notion of conspiracy as a multilateral relationship has been abandoned in favor of the unilateral approach of directing the inquiry to individualized culpability, to look to "conduct sufficient to establish the responsibility of a given actor rather than the conduct of a group," Practice Commentary, following V.T.C.A. Penal Code, § 15.02.

Article 38.14, V.A.C.C.P., set out as note 1 in the margin of the majority opinion, dates back to the Old Code, and was Article 718, C.C.P., 1925. *Braly v. State,* 125 Tex.Cr.R. 374, 68 S.W.2d 504 (1934) examined the record for sufficiency of evidence to support a conviction for conspiracy to commit theft against the requirements of what is now Article 38.14.

"... It is observed that the accomplices alone testified that there was a positive agreement to commit a felony. Unless they were corroborated as to this positive agreement, the conviction cannot stand. Article 718, C.C.P., provides that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant to the offense committed, and further provides that the corroboration is not sufficient if it merely shows the commission of the offense." *Id.,* 221 S.W.2d at 505.

In this light, it seems to me that the majority focuses its inquiry more on existence of evidence connecting appellant with the actual attempted murder than with an alleged agreement with intent that the murder be committed. See *Murphy v. State,* 378 S.W.2d 326, 329 (Tex.Cr.App. 1964). Thus, it bears down on the evidence which established that the .22 rifle said to have been used by Tineo belonged to appellant,[2] and opines that such renders Tineo's testimony that appellant gave him the rifle with which to fire at Jordan "more likely than not."[3] Nevertheless, eliminating

1. E. g., Article 1624, P.C. 1925: "... [I]t must appear that there was a *positive* agreement to commit a felony." See *Wilson v. State,* 127 Tex.Cr.R. 152, 74 S.W.2d 1020, (1934): "It was essential to a conviction herein that the state establish that appellant and his coconspirators entered into a *positive agreement* to burn the house ... as charged in the indictment," *id.,* 74 S.W.2d at 1021. *Rice v. State,* 123 Tex.Cr.R. 326, 59 S.W.2d 119 (1933): "... [W]e are of the opinion ... that it does not show a *positive agreement,* as required by the statute, to commit the offense of robbery," *id.,* 59 S.W.2d at 121; *Rice v. State,* 121 Tex.Cr.R. 68, 51 S.W.2d 364, 365 (1932). (All emphasis is mine unless otherwise indicated.)

2. The crime with which the accused in *McCue v. State,* 75 Tex.Cr.R. 137, 170 S.W. 280 (1914) was connected was murder. His pocketknife, positively identified by another witness, had been found near the body of the deceased who had been knocked in the head and his throat cut. An admitted participant in the killing, an accomplice, testified that McCue had struck deceased and cut his throat with a pocketknife. The Court found that presence of his pocketknife "tended very strongly" to connect appellant with the murder. However, a distinction between connecting an accused with the crime of conspiracy and with commission of the object offense, though subtle, must be maintained. *Murphy v. State,* supra, at 329.

3. The cases cited by the majority do use this unfortunate phrase, but apparently it was first stated in *Warren v. State,* 514 S.W.2d 458, 463 (Tex.Cr.App.1974) as "more likely *true* than not." Even so, it is not a statement of a primary test for corroboration, only an ancillary follow up. Thus, the thrust of the applicable standard remains the statutory one: accomplice testimony must be corroborated "by other evidence tending to connect the defendant with the offense committed"—here criminal conspiracy. See the statement of the construction "consistently" given the statute and its application by the Court in *Thomas v. State,* 166 Tex.Cr.R. 331, 313 S.W.2d 311 (1958); see also authorities collected in Branch's Annotated Pe-

from consideration the testimony of Tineo and what he said he and others did and that not tending to connect appellant with the crime charged, as we are required to do, *Walker v. State*, 615 S.W.2d 728, 732 (Tex. Cr.App.1981), the remaining evidence is sufficient to support the verdict of the jury.[4]

Accordingly, I concur in the judgment of the Court.

---

nal Code (2nd Ed.) 45, § 748; cf. *Murphy v. State; Braly v. State*, both supra.

4. Stewart recalled that appellant said he "might be lost," that he had been in the area "at some time in the past and thought he knew it" but could not find the stock, so maybe he was "a little bit lost." The majority finds that appellant had in fact been to the Wardlaw Ranch one week earlier and suggests that "he could not have been ignorant of how to get there," thereby implying that the conversation with Stewart was a charade. I am not that confident, but believe that matter of little moment since, whether once or twice, appellant is shown in the territory shortly before the shooting and thus acquainted with it.