Affirmed and Opinion on Remand filed January 10, 2008








Affirmed and Opinion on Remand filed January 10, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00595-CR

____________

 

DEARL HARDY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 344th
District Court

Chambers County, Texas

Trial Court Cause No. 344-12404

 



 

O P I N I O N   ON   R E M A N D

Appellant,
Dearl Hardy, was found guilty by a jury of perjury.  The trial court sentenced
appellant to six months confinement in the Chambers County jail and assessed a
$2,500 fine.  On appeal to this Court, we reversed appellant=s conviction on the basis that the
evidence was legally insufficient to prove that a false statement was made
under oath.  Hardy v. Texas, 187 S.W.3d 678, 684 (Tex. App.CHouston [14th Dist.] 2006), rev=d,  213 S.W.3d 916 (Tex. Crim. App. 2007).  The
Court of Criminal Appeals granted appellee=s petition for discretionary review,
reversed our judgment, and remanded the cause to this Court to address
appellant=s remaining seven sub-points of error.  Hardy, 213 S.W.3d at 917. 
We affirm.








BACKGROUND

A jury found appellant guilty of perjury after hearing
evidence that appellant directed Deputy John Joslin to file a false DWI
(driving while intoxicated) charge against Vernon Coates.  On September 3,
2001, Deputy Brett Hulsey observed Coates make two turns without signaling and
run a stop sign.  Hulsey turned on his lights and siren for Coates to stop, but
Coates failed to immediately pull over.  When Coates finally stopped, Hulsey
smelled an odor of alcohol emanating from Coates. Coates also admitted that he
had been drinking.  Hulsey later found empty beer cans in Coates= truck.  Hulsey
arrested Coates for evading arrest, failing to use his turn signal, and
disregarding a stop sign.  Hulsey did not administer any sobriety tests at the
scene and did not arrest Coates for a DWI.  Instead, Hulsey deferred to Joslin,
who had arrived on the scene with Sergeant David Beck, to determine Coates= intoxication
level because Joslin was more qualified to make such  determination.  

There is conflicting evidence as to whether Coates appeared
to be intoxicated when he arrived at the county jail.  Jailer Steve Wood saw
Coates at booking and testified that Coates was verbally abusive, agitated, and
belligerent, but did not appear to be intoxicated.  Joslin thought Coates was
borderline, but not legally intoxicated.  Hulsey testified that while he never
thought Coates was legally intoxicated, another deputy could have had probable
cause to believe Coates was intoxicated.  Hulsey later testified, seemingly in
contradiction of himself, that Coates did not appear to have the normal use of
his physical and mental faculties and that Coates appeared to be intoxicated. 
Hulsey stated, however, that he was not qualified to judge Coates= intoxication at the time of his
arrest.








At the jail, Hulsey executed a probable cause affidavit on
the traffic offenses committed by Coates.  Carlton Carrington, a county
dispatcher and notary, testified that appellant, who at the time was chief
deputy of the Chambers County Sheriff=s Department, learned
of Coates= arrest and that his attorney was coming to the jail;
appellant told the dispatcher Agood news travels fast.@[1]   Appellant then
contacted Hulsey at the jail.  Hulsey explained to appellant the traffic
violations precipitating Coates= arrest.  Hulsey also told appellant that
he was unsure whether Coates was legally intoxicated and that Joslin was
handling the DWI aspect of the traffic stop.

After his initial conversation with Hulsey, appellant
called the jail to speak to Joslin.  Joslin told appellant that he had
performed the HGN (horizontal gaze nystagmus) test at the jail and determined
that Coates was borderline, but not legally intoxicated.  Joslin did not
perform any other sobriety tests and did not give Coates an intoxilyzer test. 
Joslin also told appellant that Coates had bloodshot eyes, smelled of alcohol,
and had stumbled slightly while entering the jail.  However, Joslin told
appellant that he did not believe Coates was legally intoxicated because Coates
had not demonstrated sufficient indicators on the HGN test.  

A few minutes later, appellant called the jail again to
speak with Joslin on an unrecorded line.  According to Joslin, appellant said
that he was very knowledgeable about DWIs and wanted Joslin to charge Coates
with a DWI Aor else.@  Joslin protested
the fairness of Coates= DWI charge, but appellant told him that
they needed the DWI in order to suspend Coates= driver=s license. 
Although Joslin did not believe Coates was legally intoxicated, he filed a
probable cause affidavit accusing Coates of DWI.   Joslin testified that he
thought he would be fired if he did not file the DWI charge.  Appellant made it
clear that anyone who broke the chain of command, in which appellant was second
in line only to the sheriff, and Awent above his
head,@ would be fired.  








In the probable cause affidavit, Joslin stated that he
smelled Aa very strong odor
of an alcoholic beverage on [Coates=] breath and
person.@  Joslin also
wrote a separate report in which he reiterated that Coates smelled of alcohol
and stated that he thought Coates Awas intoxicated to
the point that he was a danger to himself and others from losing the normal use
of his mental and physical faculties.@[2]  At trial, Joslin
testified that these statements were lies and that he filed the documents in
violation of the law.  Joslin told Hulsey, Wood, and Beck that he did not think
Coates was legally intoxicated.  Hulsey testified that after Joslin spoke with
appellant the night of Coates= arrest, Joslin seemed upset, threw his
hands in the air, and said Athat he had never in his police career
ever had to do anything like this before.@  Hulsey also
testified that Joslin later told him that he was directed to file the DWI.  
Wood testified that when he rode home with Joslin after the Coates= incident, Joslin
seemed as if something was bothering him.  Joslin told Wood that appellant had
ordered him to change his report and that he would lose his job if he did not
file the report.  Joslin also claimed to have videotaped his encounter with
Coates in which he said: AI don=t think it is
there; I think he is a little short.@  However, Joslin
was unable to locate the videotape.  

The day after Coates= arrest, appellant
summoned Joslin to his office to discuss Joslin=s original
report.  Joslin testified that his original report indicated he had filed the
DWI charge based on his conversation with appellant.  Appellant told Joslin to
delete any reference to appellant and their second telephone conversation from
the report.  Notwithstanding appellant=s demands, he also
told Joslin not to lie in his report and to tell the truth if anyone ever asked
about their second telephone conversation.  Joslin revised his report and gave
both the original and the revised copies to appellant. 








In April 2002, Ernest Rodney Yarbrough of the Sheriff=s Criminal
Investigation Division began an unrelated internal investigation on Beck. 
Yarbrough believed that appellant had tampered with the Beck investigation. 
Specifically, Yarbrough had obtained an affidavit in his investigation, but
after speaking with appellant, the affiant wanted to change his story. 
Yarbrough and appellant argued about the investigation, and appellant
confiscated Yarbrough=s files.  In May 2002, the sheriff altered
the chain of command so that Yarbrough no longer reported to appellant.  Upon
learning of this change, Joslin and other deputies met with Yarbrough. 
Yarbrough then came to believe that appellant had engaged in wrongful conduct
and relayed  his concerns to the sheriff.  Around the same time, in May 2002,
Texas Ranger Frank Huff began investigating Joslin for allegations of sexual
assault of a female deputy.[3] 
In the course of this investigation, Joslin admitted to Huff that he had
committed a crime in the Coates= incident.  Huff=s investigation
eventually included Hulsey and appellant.

Hulsey and Joslin were charged with felonies stemming from
the DWI charge against Coates.  However, they were not tried pursuant to
agreements with the State to testify against appellant at his trial.  The State
charged appellant with aggravated perjury and the lesser included offense of
perjury.  On appellant=s motion, the trial court instructed the
jury to find appellant not guilty on the aggravated perjury charge and to
decide appellant=s guilt or innocence on the perjury
charge.  The jury found appellant guilty of perjury, and the trial court
sentenced appellant to six months confinement in county jail and assessed a
$2,500 fine.

In
appellant=s remaining sub-points of error, he argues that the evidence is legally
and factually insufficient to uphold his conviction because: (1) there is
insufficient evidence proving Joslin made a statement; (2) there is
insufficient evidence proving Joslin=s declaration was false; (3) there is
insufficient evidence proving that appellant told Joslin to lie; (4) the State
presented no evidence that appellant did not think Coates committed the offense
of DWI; (5) Joslin=s accomplice testimony was not corroborated; (6) the evidence
that Coates had not committed the offense of DWI rested solely upon the
testimony of Joslin; and (7) Hulsey and Joslin had motive to lie. 








ANALYSIS

Standards of Review

We utilize familiar standards of review for appellant=s legal and
factual sufficiency challenges.  In a legal sufficiency review, we view all of
the evidence in the light most favorable to the verdict and determine whether a
trier of fact could not have found each element of the offense beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Young
v. State, 14 S.W.3d 748, 753 (Tex. Crim. App. 2000).  The jury is the
exclusive judge of the credibility of witnesses and of the weight to be given
to their testimony.  Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim.
App. 1996).  Reconciliation of conflicts in the evidence is within the
exclusive province of the jury.  Id.  Thus, when performing a legal
sufficiency review, we may not reevaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact-finder.  Dewberry
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).  We must resolve any
inconsistencies in the testimony in favor of the verdict.  Curry v. State,
30 S.W.3d 394, 406 (Tex. Crim. App. 2000).








When reviewing the factual sufficiency of the evidence to
support a conviction, we review all the evidence in a neutral light, favoring
neither party.  Watson v. State, 204 S.W.3d 404, 414‑15 (Tex.
Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex. Crim. App.
2005).  We then ask (1) whether the evidence supporting the conviction,
although legally sufficient, is nevertheless so weak that the jury=s verdict seems
clearly wrong and manifestly unjust, or (2) whether, considering conflicting
evidence, the jury=s verdict is against the great weight and
preponderance of the evidence.  Watson, 204 S.W.3d at 414‑15, 417;
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).   An appellate
court judge cannot conclude that a conviction is Aclearly wrong@ or Amanifestly unjust@ simply because,
on the quantum of evidence admitted, he would have voted to acquit had he been
on the jury.  Watson, 204 S.W.3d at 417.  Nor can an appellate court
declare that a conflict in the evidence justifies a new trial simply because it
disagrees with the jury=s resolution of that conflict.  Id. 
Additionally, we give due deference to the jury=s determinations,
particularly those concerning the weight of the evidence and the credibility of
witness testimony.  See Johnson, 23 S.W.3d at 8-9.

Because the jury was charged with the law of parties, the
State was required to prove beyond a reasonable doubt that appellant, acting
with intent to promote or assist Joslin in committing perjury, solicited,
encouraged, directed, aided, or attempted to aid Joslin to commit perjury.  See
Tex. Pen. Code ' 7.01(a), 7.02(a)(2) (Vernon 2003).  A
person commits perjury if, with intent to deceive and with knowledge of the
statement=s meaning, he makes a false statement under oath. 
Tex. Pen. Code ' 37.02(a)(1).

Evidence
That Joslin Made a False Statement 

In
appellant=s first and second sub-points, he argues that there was no evidence
showing Joslin made a false statement in his probable cause affidavit. 
Specifically, appellant argues that Joslin simply identified the charge on
which he arrested Coates and made a declaration as to his subjective opinion. 
Joslin=s affidavit begins
with the sentence, AThe undersigned affiant, a peace officer
under the laws of the State of Texas, and being duly sworn, on oath makes the
following complaint and statement of fact.  This officer had personal knowledge
of the following facts and hereby charges that: . . . .@  The next section
is the criminal complaint and states, AIn Chambers
County, Texas, [Coates] did then and there unlawfully commit the offense(s) of
. . . DWI.@  Joslin also stated the factual
background surrounding Coates= arrest.  Section 37 of the Texas Penal
Code defines a Astatement@ as any
representation of fact.  See Tex. Penal Code Ann. ' 37.01(3).  Joslin=s statement that
he had personal knowledge that Coates unlawfully committed the offense of DWI
is clearly a representation of fact.    








Furthermore, A[a] person who
willfully swears falsely to a belief in the existence of a fact which he knows
does not exist is as guilty of perjury as if he had sworn directly to the
existence of a fact which he knew did not exist.@  Brasher v.
State, 715 S.W.2d 827, 831 (Tex. App.CHouston [14th
Dist.] 1986, no pet.).  In other words, a statement of opinion or belief may
constitute a false statement when, in fact, the accused holds no such opinion
or belief.  See id.  At trial, Joslin testified that he believed the
statements indicating Coates had committed the offense of DWI were untrue at
the time they were made.  Joslin also told Hulsey, Wood, and Beck that he did
not believe Coates was  legally intoxicated.  Appellant failed to controvert the
State=s evidence showing
Joslin did not believe Coates was intoxicated when he filed the probable cause
affidavit.  Instead, appellant attempted to shift the focus on whether Coates
was legally intoxicated the night of his arrest.  The issue of Coates= intoxication,
however, is irrelevant in determining whether Joslin made a false statement. 
Because the State=s theory was that Joslin misrepresented
his belief that Coates was intoxicated, the only relevant issue with respect to
Joslin=s making a false
statement is whether Joslin actually believed Coates was intoxicated at the
time he made the sworn statements.  We find that the evidence is legally and
factually sufficient to support the jury=s finding that
Joslin made a false statement.    

Evidence
that Appellant Told Joslin to Lie

In
appellant=s third sub-point, he argues that the evidence is insufficient to prove
he directed
Joslin to commit perjury.  Specifically, appellant argues that the evidence
shows his mere direction to Joslin to reconsider his original report. 
Appellant relies on Joslin=s testimony, wherein he testified that
appellant told him, ADon=t lie on your
report.  If anyone asks you if I talked to you on the phone and stuff, you tell
them the truth.@  Joslin further testified on
cross-examination that appellant did not explicitly tell him to falsify an
affidavit or to omit from his probable cause affidavit that he did not believe
appellant to be intoxicated.  According to appellant, this testimony is
consistent with his theory that there is a difference between directing another
to lie, and directing another to reconsider; according to appellant, he directed
Joslin to reconsider.  








However, Joslin also testified that appellant told him to
file the DWI Aor else.@  Joslin
understood the Aor else@ to mean that he
would be fired if he did not change his report and file the DWI against
Coates.  There was significant testimony that, as second in command, appellant
ran the office by intimidation.[4] 
It was understood that if one crossed appellant, that person would be in danger
of losing his job.  This evidence of intimidation is consistent with Joslin=s understanding
that he was required to file the DWI or risk losing his job.  Joslin further
testified that appellant told him to remove any language in the original report
that referred to appellant and their unrecorded telephone conversation. 
Finally, the State offered a motive for appellant=s actions with
evidence showing that Coates was highly disliked due to a troubled history with
the sheriff=s office.  With this evidence, the jury could have
inferred that while appellant did not affirmatively tell Joslin to lie, his Aor else@ statement
impliedly directed Joslin to falsify his report.  While the jury could have
accepted appellant=s theory that he was only directing Joslin
to Areconsider,@ and not lie, they
could also have inferred, as apparently they did, that the general statement Ado not lie@ was dominated by
appellant=s direct pressure on Joslin to change his report and
to file the DWI, coupled with appellant=s history of
intimidation at the sheriff=s office.  

It is the exclusive province of the jury to resolve
conflicts in the evidence by making determinations of the credibility of the
witnesses.  Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App.
2000).  The evidence tending to show that appellant directed Joslin to make a
false statement is not against the great weight and preponderance of the
evidence.  We find the evidence legally and factually sufficient to support the
jury=s finding that
appellant directed Joslin to commit perjury.  

Evidence
Appellant Did Not Think Coates Committed a DWI








In
appellant=s fourth sub-point, he argues that the evidence is insufficient to show his acting
with the intent to promote or assist Joslin in making the false statement.
Specifically, appellant contends that since he believed Coates was intoxicated,
he did not promote or assist Joslin in making a false statement.  However,
appellant=s personal belief about Coates= intoxication is
irrelevant.  Even if appellant personally believed Coates was intoxicated, he
knew that Joslin did not believe Coates was legally intoxicated based on their
first telephone conversation.  Therefore, appellant knew, that by directing
Joslin to file a probable cause affidavit asserting the belief and representing
the fact that Coates was legally intoxicated, he was directing Joslin to lie. 
The jury could have reasonably inferred that when appellant directed Joslin to
file the DWI against Coates, knowing that Joslin did not believe it to be
warranted, appellant was acting with the intent to promote Joslin=s perjury. 
Accordingly, we find the evidence legally and factually sufficient to support
the finding that appellant acted with the necessary culpability.

Evidence
Corroborating Joslin=s Testimony

In
appellant=s fifth and seventh sub-points, he argues that the evidence was legally
and factually insufficient to uphold his conviction because Joslin=s accomplice testimony was not
corroborated.  Although appellant raises this issue under his legal and
factual insufficiency arguments, a different standard governs whether there is
sufficient evidence to corroborate accomplice testimony.  Specifically, a
conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the
offense committed.  Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).  As
the reviewing court, we eliminate all accomplice testimony from consideration
and then examine the remaining portions of the record to see if there is any
evidence tending to connect the accused with the commission of the crime.  Castillo
v. State, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007).  The corroborating
evidence need not be sufficient by itself to establish guilt; there simply
needs to be other evidence tending to connect the defendant to the offense.  Id.









The record contains evidence, other than Joslin=s testimony,
tending to connect appellant with the offense.  The State offered evidence from
other witnesses establishing that Coates had a history of trouble with the
sheriff=s office, which
suggests a motive for appellant=s actions.  A number of witnesses
testified that appellant ran the sheriff=s office by
intimidation, and Henry, a magistrate, testified that appellant attempted to
intimidate him when asked about Joslin=s affidavit. 
Carrington, the county dispatcher on duty the night of Coates= arrest, testified
that appellant asked to speak with Joslin on an unrecorded line.  Finally, both
Hulsey and Wood corroborated Joslin=s testimony that
appellant directed Joslin to file the false statement.  Hulsey testified that
after Joslin got off the phone with appellant, Joslin was upset, threw his
hands in the air in frustration, and said Athat he had never
in his police career ever had to do anything like this before.@  Hulsey further
testified that Joslin told him he was directed to file the DWI.  Wood also
testified that Joslin seemed worried following his conversation with
appellant.  According to Wood, Joslin told him that appellant had ordered
Joslin to change his report, and that he would lose his job if he failed to do
so. Appellant argues that such evidence cannot be considered corroborating
because it Acame from Joslin@Cpresumably meaning
that because the witnesses heard the statements directly from Joslin, they are
improper.  We do not find such a limitation in article 38.14.  See Tex.
Code Crim. Proc. art. 38.14.  

Appellant further argues that because the evidence proving
that Coates was not intoxicated rested solely upon the testimony of Joslin, it
is insufficient.  The issue of whether Coates was intoxicated is irrelevant to
this appeal.  Appellant was convicted on a theory that he directed Joslin to
file an affidavit swearing that Joslin believed Coates was intoxicated despite
Joslin=s belief to the
contrary.  Even if the jury were to have ultimately found Coates to have been
intoxicated, Joslin nonetheless misrepresented his belief about Coates= intoxication
under oath pursuant to appellant=s direction. 
Consequently, this sub-point of error is without merit.  We overrule appellant=s fifth and
seventh sub-points of error.

Hulsey=s and Joslin=s Motive to Lie








In
appellant=s last sub-point, he argues that the evidence is legally and factually 
insufficient to uphold his conviction because both Hulsey and Joslin had motive
to lie.  In
support of his argument, appellant relies on Eckert v. State, 623
S.W.2d 359, 361 (Tex. Crim. App. 1981), overruled by Reed v. State,
744 S.W.2d 112 (Tex. Crim. App. 1988), for the proposition that accomplice
testimony, untrustworthy by nature, should be received and viewed with
caution.  This proposition is simply the policy justification behind article
38.14 of the Texas Code of Criminal Procedure, which requires that an
accomplice witnesses= testimony be corroborated by other
evidence.  See Eckert, 623 S.W.2d at 361; Walker v. State, 615
S.W.2d 728, 731-32 (Tex. Crim. App. 1981); Wincott v. State, 59 S.W.3d
691, 698 (Tex. App.CAustin 2001, pet. ref=d).   As discussed
above, Joslin=s testimony was sufficiently corroborated; therefore,
the fact that it is, in a general sense, Auntrustworthy@ is of no
consequence in this case.  The other possible relevance to Hulsey=s and Joslin=s motive to lie is
credibility.  The law is clear that the fact-finder is the exclusive judge of
witness credibility and the weight to be given to their testimony.  Swearingen
v. State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003); Wesbrook, 29
S.W.3d at 111.  Therefore, we defer to the jury=s credibility
findings in this case.  We overrule appellant=s eighth sub-point
of error.  

After reviewing all the evidence,
we find that the evidence is legally and factually sufficient to support
appellant=s conviction and overrule appellant=s sole point of error.  We affirm
the trial court=s judgment.   

 

 

 

/s/      Adele Hedges

Chief Justice

 

Judgment rendered
and Opinion on Remand filed January 10, 2008.

Panel consists of
Chief Justice Hedges, Justice Anderson, and Senior Chief Justice Murphy.*

Publish C Tex. R. App. P. 47.2(b).

 

 

 

*Senior Chief
Justice Paul C. Murphy sitting by assignment.









[1]  Presumably, appellant=s comment stems from Coates= history with the sheriff=s department, including a highly publicized and
controversial arrest for the attempted murder of two deputies.  Although the
jury did not hear specific details about Coates= history with the department, witnesses testified
that relations between Coates, his lawyer, and the sheriff=s department were unfriendly, and
that Coates was treated as a special case the night of his arrest.





[2]  Joslin claimed to have written an original report on the DWI charge,
but neither he nor the district attorney=s office was able to locate it.  Joslin also testified that
he did not write the supplemental report used as evidence at trial and did not
know where it came from; he stated, however, that the supplemental report
accurately described what happened the night of Coates= arrest.





[3]  Joslin maintained that the allegations were for
sexual harassment, not sexual assault.  Joslin was not prosecuted on these
charges pursuant to his deal with the State to testify at appellant=s trial.





[4]  Magistrate Tommy Henry testified that he believed appellant tried to
intimidate people.  When Henry questioned appellant about the differences in
Hulsey=s and Joslin=s probable cause affidavits,
appellant became Atesty@ and told Henry that Awe charge them; you read them their rights.@  Henry interpreted this encounter
as appellant=s attempt to intimidate him.